[Civ. No. 9056. Second Appellate District, Division One.—August 23, 1933.]

LOUIS R. GOMEZ, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Proctor K. Perkins and Marion P. Betty for Petitioner.

Everett W. Mattoon, County Counsel, and Fred M. Cross, Deputy County Counsel, for Respondents.

HOUSER, J.—It appears that petitioner, who represents himself as "an indigent person", is the plaintiff in an action pending in the Superior Court of the County of Los Angeles, and that heretofore his application to said court to the effect that he be permitted "to further prosecute" his said action *in forma pauperis* was denied for the sole reason (which is conceded to be the fact) that the attorney who represents the plaintiff in said action "has a contingent interest therein". Petitioner now seeks from this court a mandate by which the said superior court and a designated judge thereof shall be required "to make an order permitting the petitioner to prosecute his action without the prepayment of the jury and reporter's fees".

In effect, repeatedly it has been declared by the courts of this state that in its simplicity, not only the policy of the courts, but as well the unwritten law, is that "without money and without price" indigent persons shall be afforded the use of the trial courts in the maintenance and for the protection of their civil rights. The obstacle in the way of the full and unabridged recognition by such courts, as well as the permissive mutual execution of such privilege

by the respective interested parties, arises when the situation presents conditions which in some manner indicate the constructive absence in the litigant of the essential quality of destitution, or at least of such property as, from a practical standpoint, precludes the expenditure by him of the funds represented by the legal fees and costs in the premises. It is apparent that where the right sought to be enforced, or to be protected, is one in which some person who is presumably financially responsible is either equally or partially interested with the litigant, as by a joint, a common or a community interest in the subject matter of the existing or proposed litigation, the rule should not be given application. Ordinarily the difficulty lies primarily in an endeavor to determine the existence of the legal ownership by some outside party of some pecuniary interest either in the cause of action itself, or in the anticipated results or fruits thereof. It is manifest that as a result of a valid agreement entered into between an indigent person who was the possessor of a cause of action and some financially responsible person prior to the institution of legal proceedings, whereby a contingent interest in the cause of action was transferred from the former to the latter, and on the termination of the action an equal, or any substantial division between such interested persons of any moneys realized from the judgment occurred, a situation would be presented which should disclose such an interest in the subject matter of the litigation by the outside party as should have forbidden the exercise of the privilege ordinarily extended to destitute persons by which they may be or are excused from the payment of fees incident to the litigation. Concretely, and by way of illustration, if perchance in consideration of the advancement by some individual to an indigent person of moneys to cover living expenses of the latter pending a determination of his action against some third person, it should be agreed between the interested persons that an equal division of the proceeds of the action should take place between them, it should be clear that the destitute person should not be accorded the privilege of maintaining his action at the expense of the public. It should also be apparent, when established as a fact, that the contribution by the "outsider" was either in aid of, or was incident to, the contemplated or existing legal proceedings instituted or

defended by the indigent person, neither the particular means or method employed, nor the manner by which the indigent person was financially assisted, should be considered either as determinative of, or even as material to the question of whether the "outsider" was interested in the anticipated recovery in the litigation. In other words, whether the contribution was made by a payment of cash to the destitute person, or whether such contribution consisted of goods, wares, merchandise or services performed, or to be performed, would be wholly immaterial. Concededly a contract might be entered into between a poverty-stricken person, who was possessed of a good cause of action against some other individual, or a corporation, and some avaricious and unconscionable person, by which, and in consideration of the passing from the first mentioned to the last of something of comparatively trifling value by which the pressing necessities of the first-mentioned person might be immediately alleviated, the last-mentioned individual would become entitled to the whole and every part of any money, however great in amount, which might be recovered in an action proposed to be instituted on said cause of action; or, even in the absence of immediate consideration therefor, a sense of delayed justice, as it affected his asserted cause of action, might be the controlling inducement to an indigent person to agree with an attorney in effect that if he would prosecute the action, for his services in that regard the attorney might be entitled to whatever he might recover therein. In such circumstances it would seem unlikely that anyone would seriously contend that because the action was to be maintained or carried on in the name of the indigent person, the prepayment or payment of fees, court costs, etc., should be waived by the state. No difference in principle is apparent between such a situation and one in which a large, or even a small, percentage of the anticipated recovery is owned by some "outsider", or by an attorney, acquired by him in payment of services either performed, or to be performed, by him in the conduct of the case.

Reverting to the instant facts in that regard, it appears that the attorney who at all times here in question has represented the petitioner, "was employed in said action under a contingent contract for his fees"; that is to say, as was expressed in the written understanding of the parties

thereto, the "compensation will be one-third of such amount as you (the indigent person) receive either by suit, compromise or settlement, . . . "

Ordinarily, the determination of the question of the interest of the "outsider", or his right to participate in any recovery which may result from proposed or pending litigation, necessarily depends upon the legality and the binding force of the contract between the parties. In some jurisdictions it has been held, and still may be the law therein, that such a contract, being a variety of maintenance or champerty, is illegal and at least voidable; but in this state, as early as 1863, in the case of *Mathewson* v. *Fitch,* 22 Cal. 86, 95, it was held that "the offense of maintenance is unknown to the laws of this state". In that case, in effect, it was also held that a contract between an attorney and his client for a contingent fee was valid and enforceable; and in the later cases of *Hoffman* v. *Vallejo,* 45 Cal. 564, *Luco* v. *De Toro,* 91 Cal. 405 [18 Pac. 866, 27 Pac. 1082], and *Bergen* v. *Frisbie,* 125 Cal. 168 [57 Pac. 784], the latter principle was affirmed. In addition thereto, in the first two of the last-cited cases, it is held that such a contract transfers to the attorney an equitable interest in any judgment which may be recovered. (See, also, *Howell* v. *Budd,* 91 Cal. 342 [27 Pac. 747]; *Tracy* v. *Ringole,* 87 Cal. App. 549 [262 Pac. 73]; *Kelly* v. *Smith,* 204 Cal. 496 [268 Pac. 1057]; *Cassetta* v. *Del Frate,* 116 Cal. App. 255 [2 Pac. (2d) 533].)

As far as the industry of respective counsel has disclosed, no ruling has ever been announced by any appellate tribunal of this state where the sole question submitted to it has been identical with that here at issue. However, in each of two cases the element of "contingent fees" as it affected the privilege of an indigent person to prosecute a cause of action without the prepayment of the statutory filing fees, etc., included with other alleged obstacles thereto, has been the subject of consideration; and in each of such cases, although no direct intimation was given by the court respecting the single element of "contingent fees", the indications were that where it appeared that a contingent fee had been agreed upon between the indigent person and his attorney, the ordinary rule by which the prepayment of filing fees, etc., would be waived had no proper application.

In the course of the opinion in the case of *Martin* v. *Superior Court*, 176 Cal. 289, 297 [168 Pac. 135, 138, L. R. A. 1913B, 313], it is said:

"Our next consideration is the narrow one of objections urged by respondents to the sufficiency of the petitioner's moving papers addressed to the superior court. Certain of these appear in the verified return of the judge of that court. The plaintiff's verified petition before the superior court declared that no person other than himself had any interest in the successful prosecution of the action. The judge's return declares that he had information and belief to the effect that the attorneys for the plaintiff had a contingent interest, being a contingent fee, in the successful outcome of the litigation, and that for this added reason the plaintiff's application was refused. But if it be conceded that issue was here joined upon the direct averment of plaintiff's petition, something more is required as to the nature, source, origin, and soundness of the court's belief, before its order can be upheld on this ground. This showing is not made. Yet in view of the fact that the attorneys for the plaintiff were before the superior court, it could most easily have been made."

In the case of *Jenkins* v. *Superior Court*, 98 Cal. App. 729 [277 Pac. 757], the petitioner applied for a writ of mandate to compel the respondent judge to grant leave to the petitioner to proceed *in forma pauperis* in a certain action then pending in the court in which the said judge presided. From the petition it appeared that the petitioner was an administrator of an estate, and that the only asset of said estate was a cause of action for the death of the person whose estate was being administered. After the complaint was filed for such alleged wrongful death, the petitioner made application to the lower court for leave thereafter to proceed in such action *in forma pauperis,* setting forth in the petition that the deceased left no estate and that petitioner had no funds except such as she received from her employment from which she derived the sum of $100 per month. It further appeared from the petition that the next of kin of the deceased was the petitioner and her brother. No showing was made that the brother was not in a position to advance costs. *"It also appeared that the petitioner had employed attorneys to represent her in the action upon*

*a contingent basis."* The application for the writ of mandate was denied.

In other jurisdictions, where the question has arisen, the decision thereon generally has depended upon a determination of the foundational issue of whether a contract for a contingent fee was champertous; and where in that respect a conclusion has been reached in the affirmative the necessary result has been that such a contract, being void and unenforceable, could not affect the primary right of the indigent person to prosecute his action *in forma pauperis.* (*Stevens* v. *Sheriff,* 76 Kan. 124 [90 Pac. 799, 11 L. R. A. (N. S.) 1153]; *United States ex rel. Payne* v. *Call,* 287 Fed. 520.) But, as hereinbefore has been indicated, the rule in this state is that a contract by an attorney with his client to the effect that the fee to be paid for the services of the attorney shall be contingent is not champertous; hence, as far as a decision by the courts of this state is concerned, the authorities which rely upon the illegality of such a contract as a basis for the conclusion that the right of the indigent person is unaffected by such a contract, are inapplicable.

By the weight of authority, both federal and the state of New York, as well as some of English origin, the practice of permitting an indigent person to sue without the prepayment of filing fees, etc., is held improper where it appears that in the action in which the indigent person seeks to invoke such rule, either an attorney or some other assumedly financially responsible person has a contingent interest in the result of the action. (*Boyle* v. *Great Northern Ry. Co.,* 63 Fed. 539; *Feil* v. *Wabash R. R. Co.,* 119 Fed. 490; *Phillips* v. *Louisville & N. R. R. Co.,* 153 Fed. 795; *United States* v. *Ross,* 298 Fed. 64 [33 L. R. A. 728]; *Chetkovich* v. *United States,* 47 Fed. (2d) 894; *Cahill* v. *Manhattan Ry. Co.,* 38 App. Div. 314 [57 N. Y. Supp. 10]; *Harris* v. *Mutual Life Ins. Co.,* 20 N. Y. Civ. Proc. 192; *Downs* v. *Farley,* 12 N. Y. Civ. Proc. 119; *In re Roberts,* 33 Ch. Div. 265; *Lindsay* v. *Tyrrell,* 44 Eng. Repts., Full Reprint, 889.)

It follows that the application to this court for a writ of mandate in the premises should be, and it is, denied.

Conrey, P. J., and York, J., concurred.