[Civ. No. 11327.    Third Dist.    Sept. 13, 1966.]

COUNTY OF SUTTER, Petitioner, v. SUPERIOR COURT OF SUTTER COUNTY, Respondent; IVA HIGGINS, Real Party in Interest.

Rich, Fuidge, Dawson, March, Tweedy & Morris and Thomas A. Tweedy for Petitioner.

No appearance for Respondent.

Watt & Peckham and Ted Isles for Real Party in Interest.

FRIEDMAN, J.—The question is whether the trial court has authority to exempt an indigent plaintiff from compliance with the statutory provision for a cost bond in lawsuits against public entities.

Sutter County is the defendant in a personal injury action pending in the superior court of that county. Plaintiff in the suit is Iva Higgins. Invoking Government Code section 947, the counties served a demand upon Mrs. Higgins for an undertaking of $100 to secure it against costs of suit.[1] Mrs. Higgins then moved for an order permitting her to proceed without the

[1]Government Code section 947 provides:

"(a) At any time after the filing of the complaint in any action against a public entity, the public entity may file and serve a demand for a written undertaking on the part of each plaintiff as security for the allowable costs which may be awarded against such plaintiff. The undertaking shall be in the amount of one hundred dollars ($100) for each plaintiff or in the case of multiple plaintiffs in the amount of two hundred dollars ($200), or such greater sum as the court shall fix upon good cause shown, with at least two sufficient sureties, to be approved by the court. Unless the plaintiff files such undertaking within 20 days after service of a demand therefor, his action shall be dismissed.

"(b) If judgment is rendered for the public entity in any action against it, allowable costs incurred by the public entity in the action, but in no event less than fifty dollars ($50), shall be awarded against each plaintiff.

"(c) This section does not apply to an action commenced in a small claims court."

bond, asserting financial inability to obtain it. The court had before it her declaration under perjury, which disclosed assets consisting of a trailer house worth $600, cash of $100 derived from pensions, personal effects worth $100 and monthly income consisting of $145.50 in social security and old age security payments. The county did not controvert her statement of assets and income. Finding that she had inadequate means to furnish security for costs, the court granted her motion.

Mrs. Higgins did not in so many words seek—nor did the court grant—leave to proceed *in forma pauperis*. The order simply grants her leave to proceed without security for costs. Because it is grounded on her indigence, we view it by the same standards as an *in forma pauperis* order. ■ The county seeks relief by mandate, urging that the court had no discretion to dispense with section 947. The remedy is appropriate. (*Isrin* v. *Superior Court,* 63 Cal.2d 153, 154-155 [45 Cal.Rptr. 320, 403 P.2d 728].) The county does not say that Mrs. Higgins is ineligible for *in forma pauperis* status. Essentially it contends that compliance with section 947 is mandatory and the trial court powerless to allow the dispensation.

The common law of England authorized the courts to dispense with payment of litigation fees otherwise payable by indigent litigants. This authority was transmitted to the California courts by former Political Code section 4468 (now Civ. Code, § 22.2), which established the English common law as the California rule of decision so far as consistent with Constitution and statute. (*Martin* v. *Superior Court,* 176 Cal. 289, 292-296 [168 P. 135, L.R.A. 1918B 313].) General statutes calling for litigation fees, such as filing and jury fees, do not curtail this power. (*Ibid.,* pp. 296-297.)

A significant distinction occurs at this point. ■ ■ ■ ■ The poor litigant's fees are one matter, the opposite party's costs another.[2] To relieve an indigent plaintiff of public exactions is quite different than permitting him to conduct a lawsuit at the possible expense of his adversary. California decisions on the *in forma pauperis* dispensation involve the poor person's fees, not his adversary's costs. (*Isrin* v. *Superior Court, supra,* 63 Cal.2d 153; *Majors* v.

---

[2] "Costs include all those expenses of litigation which one party has to pay to the other. They must be carefully distinguished from 'fees' which have to be paid by a litigant to the officers of the court." (Goodhart, *Costs,* 38 Yale L.J. 849.) The distinction between fees and costs in suits *in forma pauperis* was observed by the writer of a note in 27 California Law Review 352 (at p. 353, fn. 6) but seems to have occasioned no other California comment.

*Superior Court,* 181 Cal. 270 [184 P. 18, 6 A.L.R. 1274]; *Martin* v. *Superior Court, supra,* 176 Cal. 289; *Emerson* v. *Superior Court,* 29 Cal.App.2d 539 [84 P.2d 1059]; *Alexander* v. *Superior Court,* 29 Cal.App.2d 538 [84 P.2d 1061]; *Gomez* v. *Superior Court,* 134 Cal.App. 19 [24 P.2d 856] (disapproved in *Isrin* v. *Superior Court, supra*); *Willis* v. *Superior Court,* 130 Cal.App. 766 [20 P.2d 994]; *Rucker* v. *Superior Court,* 104 Cal.App. 683 [286 P. 732]; *Jenkins* v. *Superior Court,* 98 Cal.App. 729 [277 P. 757]; *Hammond* v. *Justice's Court,* 37 Cal.App. 506 [174 P. 69]; *Wait* v. *Superior Court,* 35 Cal.App. 330 [169 P. 916].)

██ Generally, a California defendant proceeds without assurance of the plaintiff's ability to pay costs at the lawsuit's end. This lack of assurance is tempered by statutes requiring or authorizing security for costs in selected kinds of litigation. Code of Civil Procedure section 1030 provides for cost security by a nonresident plaintiff; section 830 by the plaintiff in a defamation action; section 391 et seq. by a ''vexatious litigant'' plaintiff; Corporations Code section 834 in stockholders' derivative suits; Military and Veterans Code section 393 where the defendant is a member of the active militia; and Government Code section 947 where the defendant is a public entity. Such statutes have withstood various kinds of constitutional attack. (*Beyerbach* v. *Juno Oil Co.,* 42 Cal.2d 11 [265 P.2d 1]; *Taliaferro* v. *Hoogs,* 236 Cal.App.2d 521 [46 Cal.Rptr. 147]; *Reid* v. *State of California,* 193 Cal.App.2d 799 [14 Cal.Rptr. 597]; *Vinnicombe* v. *State of California,* 172 Cal.App.2d 54 [341 P.2d 705].) No reported California decision considers these statutes in relation to the *in forma pauperis* power. One text declares that a plaintiff's poverty does not excuse him from giving security for costs, citing, however, decisions which seem to turn on specific statutes. (20 C.J.S., Costs, § 129, p. 374, note 46.) Other authorities wrap fees and security for costs into a single bundle, subjecting both to the dispensing power for poor litigants. (*Pinchback* v. *Hockless,* 139 Tex. 536 [164 S.W.2d 19, 20]; 20 Am.Jur.2d, Costs, § 47, p. 38, note 1; § 48, p. 39, note 5.)

Subjection of cost bond requirements to the *in forma pauperis* power is consistent with—perhaps required by— California doctrine. Courts of other states have ascribed the fee-dispensing power of the English courts to the statute 11 Henry VII, chapter 12, enacted in 1495. (See Note, 6 A.L.R. 1282.) An historical inquiry conducted by the California Supreme Court in *Martin* v. *Superior Court, supra,* rejected

this ascription, finding that the statute of Henry VII only confirmed preexisting practices of the English common law and equity courts. (See also 1 Pollock and Maitland, History of English Law (1911) p. 195; Maguire, *Poverty and Civil Litigation,* 36 Harv.L.Rev. 361, 363-372; Note, 6 Cal.L.Rev. 226.) Nevertheless, California's adoption of the "common law" embraced common law jurisprudence in general, including its existent statutory modifications. (*Moore* v. *Purse Seine Net,* 18 Cal.2d 835, 838 [118 P.2d 1]; *Martin* v. *Superior Court, supra,* 176 Cal. at p. 293.) Medieval British practices permitted suspension of demands for security where the plaintiff was poor. In the reign of Henry I (1100-1135) an ordinance requiring security was mitigated for the poor by a provision " 'that those who had not sufficient present security should pledge their faith to make satisfaction to the utmost of their power.' " (Maguire, *op. cit.,* p. 361, quoting Mirror of Justices, 7 Selden Soc. 14 (1893).) Another writer quotes the Mirror of Justices (ch. 1, § 3) that "none was bound to answer to any suit, nor to appear to any action in the King's courts before the King's justices, before they found sureties to answer damages and the costs of suit, if damages lay in the case . . . . To which ordinance King Henry the First put this mitigation in favor of poor plaintiffs, that those who had not sufficient sureties present should make satisfaction according to their ability, according to a reasonable taxation." (6 A.L.R. at pp. 1281-1282.) During the rule of Edward I (1272-1307) a poor man was permitted to " 'sue his plaint upon the pledge of his promise only; and then he shall find no other security to the sheriff.' " (Maguire, *op. cit.,* p. 362, citing Britton, Legal Classic Series (Nichols trans., 1901 ed.) 243.) Although statutes giving costs to the successful defendant originated somewhat later (Goodhart, *op. cit.,* p. 853), there is no evidence that such statutes obliterated the judges' power to dispense with security. The authorities justify the conclusion that the common-law power embraced waiver of security for costs as well as suspension of fees.

A number of American decisions permit the maintenance of poor persons' litigation notwithstanding their inability to comply with cost security statutes. (See cases collected in 6 A.L.R. at pp. 1285, 1288, 1291.) Although a statute (28 U.S.C.A. § 1915, subd. (a)) now permits federal courts to waive cost security from an indigent litigant, prestatutory decisions in federal admiralty cases customarily permitted suspension of rules requiring security for costs. (*Lowndes* v. *The Phoenix,* 36 F. 272, cited in 6 Cal.L.Rev. at p. 227.)

Accepting as we do the concept that the California *in forma pauperis* power covers security for costs, we inquire whether that power is curtailed by Government Code section 947. In seemingly mandatory terms, the statute says that the suit "shall be dismissed" if the plaintiff fails to file an undertaking within 20 days of the defendant's demand. Despite the superficially mandatory language, *Boyer* v. *County of Contra Costa*, 235 Cal.App.2d 111, 115 [45 Cal.Rptr. 58], holds that the filing period specified in section 947 is not jurisdictional; that, as with similar statutes, the courts have discretionary power to permit late filing. Section 947 is hardly less mandatory than statutes requiring filing fees and jury fees (e.g., Code Civ. Proc., §§ 405.5, 631). Such statutes do not trench upon judicial power to permit litigation *in forma pauperis*.

█ Although the Legislature has power to modify or abrogate common law rules, a general statute such as section 947 does not diminish judicial authority resting upon the statutory importation of common law doctrine. █ "Neither individually nor collectively are [such statutes] even susceptible of the construction that the design of the legislature was to deny to the courts the exercise of their most just and most necessary inherent power." (*Martin* v. *Superior Court, supra,* 176 Cal. at p. 297; see also *Blevins* v. *Mullally,* 22 Cal.App. 519, 533 [135 P. 307].)

Petitioner's claim of statutory rigidity is inconsistent with the spirit and design of Government Code section 947. █ As addressed to the public entity, the statute is permissive; its purpose, to furnish the public defendant with protection against unmeritorious litigation which it may demand at its own discretion.[3] █ In practice the discretion is exercised by the attorneys for the public entity or its liability insurance carrier. If the statute is used as a cannon to blast the claim of a meritorious but needy plaintiff, that discretion is misused. The public defendant or its insurance carrier would be utiliz-

---

[3]The Law Revision Commission has described the purpose of section 947 as follows: "The Commission has concluded that all public entities are entitled to protection against unmeritorious litigation, since local public entities are as likely as the State to be subjected to such actions. At the same time, however, *no unreasonable burden should be imposed upon a person who has a meritorious cause of action.* The Commission recommends, therefore, that all public entities be authorized, in their discretion, to require the plaintiff to file an undertaking for costs in any action against a public entity. . . . To further assure that no unreasonable burden is placed upon a meritorious litigant, the minimum amount of the undertaking should be fixed at $100." ( Van Alstyne, California Government Tort Liability (Cont. Ed. Bar 1964), quoted in *Boyer* v. *County of Contra Costa, supra,* 235 Cal.App.2d at p. 117.) (Italics supplied.)

ing the plaintiff's poverty to shield itself from potential liability.  The *in forma pauperis* power interposes judicial discretion where administrative discretion may have been misused. Judicial discretion to deny security for costs does no more than relegate the defense to the financial risks borne by defendants generally.

The petition is denied and the alternative writ discharged.

Pierce, P. J., and Regan, J., concurred.