[Civ. No. 9364. Fourth Dist., Div. One. Nov. 12, 1969.]

ORA LEE FULLER, Plaintiff and Appellant, v.
STATE OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Mestad & Sanborn and John B. Mestad for Plaintiff and Appellant.

Harry S. Fenton, Richard G. Rypinski, Sherman E. Hollingsworth and Dale Peterson for Defendant and Respondent.

## OPINION

**WHELAN, J.**—Plaintiff appeals from an order granting a motion to dismiss an action for personal injuries against the State of Cailifornia and denying a motion to set aside an order fixing the amount of an undertaking pursuant to Government Code, section 947.

The order denying the motion is nonappealable under Code of Civil Procedure, section 904.1 and is dismissed. The sole issue of this appeal has to do with the dismissal of the cause of action against the state for the failure of plaintiff to file a cost bond demanded by said defendant.

Plaintiff filed an action in Los Angeles County on January 4, 1967, against the State of California and others not parties to this appeal for personal injuries which allegedly rendered her a quadraplegic. The complaint is not a part of the record, but, according to plaintiff's brief, it alleges negligence of the state in its maintaining of a state highway in Imperial County, to which county the action had been transferred prior to December 1967.

On December 8, 1967, defendant filed a demand for undertaking

pursuant to Government Code, section 947.[1] On December 20, 1967, plaintiff filed a motion entitled "Motion for Change of Venue and a Motion to Set Aside the Award of an Undertaking Pursuant to Section 947 of Government Code," the text of which spoke only of the requested change of venue to Los Angeles County. On December 29, 1967, the court, by minute order, denied the motion for change of venue, and took under submission the motion to set aside the award of undertaking; counsel were given 30 days to file declarations. No declarations were filed within that period and on January 31, 1968, the motion was denied.

Since the undertaking was not filed within 20 days after service of the demand therefor, defendant, on February 21, 1968, filed a motion to dismiss the action as to the state. On February 29, 1968, plaintiff filed an affidavit in opposition in which she stated: "I do not have any funds to care for myself or to prosecute this action. That I have retained the firm of Mestad & Sanborn on a contingency basis. That I am receiving aid from the County of San Diego and medical attention from the County of Los Angeles. That to my knowledge, I am receiving nothing from Imperial County."

On March 8, 1968, the trial court took under submission defendant's motion to dismiss and allowed plaintiff 10 days to answer defendant's points and authorities; and on March 19, 1968 granted the motion to dismiss.

On April 2, 1968, an appealable order to that effect was signed by the trial court.

## The Issue

The sole issue is whether it was an abuse of discretion for the trial court to dismiss the action as to the state for plaintiff's failure to file an undertaking for costs in the face of her claim of indigency.

The question is not whether the plaintiff made a sufficient showing to entitle her to proceed without the prepayment of court fees and jury fees, but whether she made a showing of inability to furnish an undertaking "with at least two sufficient sureties."

The distinction between inability to pay court fees and inability to obtain sureties on one's undertaking is clear and was given recognition in *County*

---

[1](a) "At any time after the filing of the complaint in any action against a public entity, the public entity may file and serve a demand for a written undertaking on the part of each plaintiff as security for the allowable costs which may be awarded against such plaintiff. The undertaking shall be in the amount of one hundred dollars ($100) for each plaintiff or in the case of multiple plaintiffs in the amount of two hundred dollars ($200) or such greater sum as the court shall fix upon good cause shown, with at least two sufficient sureties, to be approved by the court. Unless the plaintiff files such undertaking within 20 days after service of a demand therefor, his action shall be dismissed."

*of Sutter* v. *Superior Court,* 244 Cal.App.2d 770, 772 [53 Cal.Rptr. 424], where the court said: "A significant distinction occurs at this point. . . . The poor litigant's fees are one matter, the opposite party's costs another. To relieve an indigent plaintiff of public exactions is quite different than permitting him to conduct a lawsuit at the possible expense of his adversary."

It may often be the case that a plaintiff who is unable to pay his own fees or costs as they accrue will also be unable to find sureties to sign his undertaking. We doubt that it can be said as a matter of law that it is always so.

By the very nature of the undertaking with two sufficient sureties its furnishing is not directly related to the plaintiff's financial condition, although such direct relation might exist if only a corporate surety might qualify.[2]

A plaintiff financially unable to post a cash bond or to pay the premium on a surety bond may, nevertheless, have friends or relatives willing and able to qualify as sureties. Such persons might well believe in the justice of a plaintiff's claim, and be willing by their undertaking to see that the claim is prosecuted.

The learned author of the decision in *County of Sutter* v. *Superior Court, supra,* 244 Cal.App.2d 770, 774, in examining the common law antecedents for permitting an indigent litigant to proceed without prepayment of fees quotes early authorities in which a showing was required to be made of inability to find sureties. "Another writer quotes the Mirror of Justices (ch. 1, § 3) that 'none was bound to answer to any suit, nor to appear to any action in the King's courts before the King's justices, before they found sureties to answer damages and the costs of suit, if damages lay in the case. . . . To which ordinance King Henry the First put this mitigation in favor of poor plaintiffs, that those who had not sufficient sureties present should make satisfaction according to their ability, according to a reasonable taxation.' (6 A.L.R. at pp. 1281-1282.) During the rule of Edward I (1272-1307) a poor man was permitted to " 'sue his plaint upon the pledge of his promise only; and then he shall find no other security to the sheriff." ' (Maguire, op. cit., p. 362, citing Britton, Legal Classic Series (Nichols trans., 1901 ed.) 243.)"

The distinction between personal inability to pay costs and inability to obtain sureties on an undertaking is emphasized in a statute that was interpreted to give the court discretion to require a suitor to furnish sureties

---

[2]In a declaration filed March 8, 1968, defendant's attorney stated that a premium on the $500 bond set by the court would have been only $10 per year.

upon the ground of his insolvency. (*Feneley* v. *Mahoney,* 38 Mass. 212.)

It seems, accordingly, that an impecunious plaintiff, to avoid the necessity of furnishing an undertaking, should make a prima facie showing that he has unsuccessfully sought to obtain such an undertaking, or that he is unable to furnish an undertaking.

The sufficiency of an affidavit to show such inability has been passed upon in a number of jurisdictions, some of which have statutes expressly providing for a waiver of the undertaking. In general, an affidavit that states the plaintiff is unable to give security for costs is sufficient. (See 28 U.S.C.A. § 1915 (a) ["unable to pay such costs or give security therefor"]; *Kerr* v. *State* (1871) 35 Ind. 288 [" has not sufficient means . . . to secure the costs"]; *Westerfield & Co.* v. *Wilson* (Ky.) 12 Bush 125 ["unable to give security for costs"]; *Walker* v. *Smith* (Miss.) 19 So. 102 ["applied to several persons and failed to make the bond"]; *Erickson* v. *Poey* (1884) 5 N.Y. Civ. Proc. 379, affirmed in 96 N.Y. 669 ["unable to procure security"]; *Lewis* v. *Smith,* 21 R.I. 324 [43 A. 542]; *Spalding* v. *Bainbridge,* 12 R.I. 244; *Long* v. *McCauley* (Tex. 1887) 3 S.W. 689 ["swore that he was unable to give security"]; *Hirkey* v. *Rhine,* 16 Tex. 576; *Missouri Pac. Ry. Co.* v. *Richmond,* 73 Tex. 568 [11 S.W. 555] ["inability to give security for costs"]; *St. Louis & S. F. Ry. Co.* v. *Williams* (Tex.Civ.App.) 37 S.W. 992 ["unable to give security therefor"]; *Kruegel* v. *Johnson* (Tex.Civ.App.) 93 S.W. 483 ["filed an affidavit that he was unable to pay or give security therefor"].)

One New York decision, *Berkman* v. *Wolf,* 65 App. Div. 79 [72 N.Y.S. 661], held more factual detail necessary than was required in the cases cited earlier, and that the following language was insufficient: ". . . he has made diligent efforts to obtain an undertaking, but has been unable to do so."

In *County of Sutter* v. *Superior Court, supra,* 244 Cal.App.2d 770, the declaration of the plaintiff did not contain any specific statement of inability to obtain an undertaking; nevertheless, the trial court found the declaration sufficient to support a waiver of the undertaking.

So far as appears from the published decision, a like action was taken by the trial court in *Bank of America* v. *Superior Court,* 255 Cal.App.2d 575 [63 Cal.Rptr. 366], upon a similar showing.

However, in *Roberts* v. *Superior Court,* 264 Cal.App.2d 235 [70 Cal.Rptr. 226], where the refusal of the trial court to dispense with an undertaking was held error, it appears that the person seeking a waiver of the undertaking supported his motion by his own declaration, and that of

his counsel, and by two affidavits of bonding company representatives, that he was indigent and could not obtain an undertaking.

In supplemental memoranda, which we requested at the time of oral argument, counsel dealt with the subject of the sufficiency of a specific showing of inability to furnish security as distinguished from a showing of inability to pay accruing fees of the plaintiff.

Plaintiff's counsel cites several decisions of the federal courts including *Adkins* v. *E. I. Du Pont De Nemours,* 335 U.S. 331 [93 L.Ed. 43, 69 S. Ct. 85, 11 A.L.R.2d 599], and *Sejeck* v. *Singer Mfg. Co.,* 113 F. Supp. 281, both of which dealt with costs on appeal and clearly dealt with the costs of preparing a record for the appellants in each case.

In the *Adkins* case, the court said, at pages 88-89: "The statute allowing *in forma pauperis* appeals provides language appropriate for incorporation in an affidavit. One who makes this affidavit exposes himself 'to the pains of perjury in a case of bad faith.' . . .

"[W]here the affidavits are written in the language of the statute it would seem that they should ordinarily be accepted, for trial purposes, particularly where unquestioned and where the judge does not perceive a flagrant misrepresentation.

"Here, the affidavits were not couched in the language of the statute. They went outside that language. Estimating that the costs would be $4,000, each affidavit stated that the affiant could not pay or secure $4,000."

In *Sejeck* v. *Singer Mfg. Co., supra,* 113 F. Supp. 281, the contents of the affidavit do not appear, other than that the application was for leave under section 1915 of 28 U.S.C.A., *supra.*

Plaintiff's counsel also argues that in order to proceed *in forma pauperis* a litigant need not be wholly destitute and need not make a showing of complete destitution, and cites authorities in support of that proposition, which is a correct statement of the law. It does not cover the specific question involved, which is the sufficiency of a showing of inability to obtain sureties for the costs that may be awarded the other party.

Plaintiff also argues that as to her, section 947, Government Code, is unconstitutional if it bars her from pursuing her action. It is not interpreted by us as barring her provided she had made a showing of inability to obtain the statutory undertaking. The statute has been held not to be unconstitutional. (*Vinnicombe* v. *State of California,* 172 Cal.App.2d 54 [341 P.2d 705].)

Many of the cases cited by defendant expound the theory that in order to be excused from paying accruing court fees, an indigent plaintiff must show that there is no person from whom he could beg or borrow money to pay such fees. That theory has not been accepted in California.

But the giving of an undertaking with two sureties is something that by definition requires the cooperation of outsiders. A showing of inability would seem to require that such cooperation had been unsuccessfully sought, or at the least that a flat declaration of such inability be made.

Defendant seems also to defend a position that has already been lost, that is that there cannot under any circumstances be a judicial waiver of the statutory undertaking.

While in the cited cases of *County of Sutter* v. *Superior Court, supra,* 244 Cal.App.2d 770, and *Bank of America* v. *Superior Court,* 255 Cal.App.2d 575 [63 Cal.Rptr. 366], it was held no abuse of discretion to dispense with an undertaking on a showing that did not specify inability to obtain sureties; it does not follow that a trial judge has abused his discretion in refusing to dispense with an undertaking on a showing that contains no reference to any attempt to obtain sureties or to inability to do so.

It might have been argued that the plaintiff, who was affected with paralysis in all four limbs, as alleged in the complaint, was ill-equipped physically to attempt to obtain sureties. However, her declaration in support of the claim to exemption from giving the undertaking showed her to have traveled from Los Angeles, to San Diego, to Las Vegas, Nevada, staying with her sisters in the two latter cities, traveling to El Centro to visit her parents, and intending to return to Los Angeles to occupy her own apartment there.

Her affidavit showed her to be dependent on public assistance for her support. While that condition is one that ultimately would pass on to the state and the United States government the burden of paying any disbursements made by her for the prosecution of her action, it does not automatically give rise to inability to obtain sureties or eliminate the necessity of making a prima facie showing of such inability.

It may be inconsistent to say that a plaintiff who is dependent upon public assistance for means of support should, nevertheless, be expected to furnish security for the payment of any judgment for costs that might be awarded against her in favor of the state which ultimately furnishes a large part of her means of livelihood.

Yet she may be held chargeable for the costs of the defendant should she be unsuccessful in her action. There are states whose statutes exempt from liability for costs of the opposing party one who is allowed to proceed *in forma pauperis.* California is among those states that do not exempt the unsuccessful indigent party from a judgment for costs, and there is no special exemption when the successful party is the state.

█ We are of opinion that the court had discretion to deny plaintiff's motion upon the sole ground that while the support for the motion showed

plaintiff's present personal inability to make any payment, it did not show her inability to obtain sureties against a future contingency.

### THE AMOUNT OF THE UNDERTAKING

■ Defendant requested an undertaking in the sum of $500 and supported the request by a declaration under penalty of perjury that in the event of trial the state would be awarded costs in excess of $500; that several depositions had been taken and others would be taken; that a jury trial would last at least eight days; another document stated that already the state had incurred taxable costs of $290.63.

It cannot be said the court abused its discretion in fixing the amount of the undertaking at $500. Had the plaintiff made claim to be able to furnish an undertaking in a lesser amount, there might be a different question; but the situation is one in which plaintiff has made no allegations either of ability or inability to furnish an undertaking in any amount.

The order is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 8, 1970. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.