[No. AO21312. First Dist., Div. Three. July 11, 1983.]

CITY OF ROHNERT PARK, Petitioner, v.
THE SUPERIOR COURT OF SONOMA COUNTY, Respondent;
DANNY WEIL et al., Real Parties in Interest.

**Counsel**

John D. Flitner, City Attorney, for Petitioner.

James P. Botz, County Counsel (Sonoma), Stephen Butler, Deputy County Counsel, Richard J. Moore, County Counsel (Alameda), Kelvin H. Booty, Jr., Assistant County Counsel, John Clausen, County Counsel (Contra Costa), George Agnost, City Attorney (San Francisco), and Paula Jesson, Deputy City Attorney, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Danny Weil and Lenny Sandroff, in pro. per., for Real Parties in Interest.

**Opinion**

**WHITE, P. J.**—This petition for an extraordinary writ, brought by the respondent in an appeal pending in this court, challenges a superior court ruling that appellants, proceeding in forma pauperis on appeal, are entitled to waiver of reporter's and clerk's transcript costs on appeal. The central issue is whether Government Code section 68511.3, and rule 985, California Rules of Court, implementing section 68511.3, have altered the common law rule that in forma pauperis appellants need not be furnished free appellate records. We conclude that the language used by the Legislature cannot be read to accomplish such a dramatic change in the law. We therefore issue a peremptory writ of mandate.

The underlying action appealed to this court was a petition for writ of mandate challenging the City of Rohnert Park's approval of a plan by Hewlett-Packard Company to construct an electronics facility within city limits. The petition challenged certification of an environmental impact report and other project approvals. After a 13-day trial, the court issued a lengthy opinion denying the petition.

Real parties Danny Weil and Lenny Sandroff filed a notice of appeal from the court's ruling and applied to the superior court to proceed in forma pauperis on the appeal. Their application was granted, permitting them to proceed "without payment of the following court fees or costs. . . . $200.00 Appeal Filing Fee Costs of *Clerks* and *Reporters* Transcripts." The court granted the application ex parte, without hearing.

Thereafter, Hewlett-Packard Company, real party in interest in the mandamus proceeding below, moved the trial court to partially rescind or modify its order. Petitioner joined in the motion. After hearing, the trial court denied the motion. This petition followed. We issued an order suspending preparation of the record pending determination of this petition. However, at oral argument real parties advised us that they are in receipt of the clerk's transcript. This matter is moot as to the clerk's transcript, as appellants cannot be required to pay now for a transcript they might have declined to order had the trial court denied their application. However, because the legal analysis is the same for both transcripts and because of the public interest in this matter,[1] we decide both issues here. (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].)

Government Code section 68511.3, adopted in 1979 (Stats. 1979, ch. 850, § 1, p. 2952) and amended in 1982 (Stats. 1982, ch. 1221, § 1, p. 4516), provides that the Judicial Council "shall formulate and adopt uniform forms and rules of court for litigants proceeding in forma pauperis." The legislation[2] lists topics the rules should cover, including: standard pro-

---

[1]As evidence of public interest in the issue, we note that amicus briefs joined by Sonoma, San Francisco, Contra Costa, and Alameda Counties have been accepted by this court. They argue that if the trial court's reading of Government Code section 68511.3 is accepted it violates article XIII B, section 6 of the California Constitution. That section provides that when the Legislature mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse the local government. We decide this petition without reaching that issue.

[2]*Government Code section 68511.3 provides as follows:* "(a) The Judicial Council shall formulate and adopt uniform forms and rules of court for litigants proceeding in forma

cedures for considering and determining applications, a procedure to toll time limitations, a procedure for maintaining confidentiality, authority for the court to take steps to verify the litigant's financial condition. Section 68511.3 specifies the conditions under which authority to proceed in forma

pauperis. Such rules shall provide: (1) for standard procedures for considering and determining applications for permission to proceed in forma pauperis, including, in the event of a denial of such permission, a written statement detailing the reasons for denial and an evidentiary hearing where there is a substantial evidentiary conflict; (2) for standard procedures to toll relevant time limitations when a pleading or other paper accompanied by such an application is timely lodged with the court and delay is caused due to the processing of the application to proceed in forma pauperis; (3) for proceeding in forma pauperis at every stage of the proceedings at both the appellate and trial levels of the court system; (4) for the confidentiality of the financial information provided to the court by such litigants; (5) that the court may authorize the clerk of the court, county financial officer, or other appropriate county officer to make reasonable efforts to verify the litigant's financial condition without compromising the confidentiality of the application; and (6) that permission to proceed in forma pauperis be granted (A) to litigants who declare under penalty of perjury that they are receiving benefits pursuant to the Supplemental Security Income (SSI) and State Supplemental Payments (SSP) programs (Sections 12200-12205.2 of the Welfare and Institutions Code), the Aid to Families with Dependent Children (AFDC) program (42 United States Code 601-644), the Food Stamp program (7 United States Code 2011-2027) or Section 17000 of the Welfare and Institutions Code and (B) to litigants who declare under penalty of perjury that their monthly income is 125 percent or less of the current monthly poverty threshold annually established by the Community Services Administration pursuant to Section 625 of the Economic Opportunity Act of 1964, as amended, and who submit a financial statement setting forth each item which makes up their monthly income in support of such averment as part of such declaration. Such rules shall further provide that the court shall grant permission to proceed in forma pauperis in any other instance in which, in its discretion, such permission is appropriate because the litigant is unable to proceed without using money which is necessary for the use of the litigant or the litigant's family to provide for the common necessaries of life. [¶] (b) The forms and rules shall provide for the disclosure of all of the following: [¶] (1) The current address of the litigant, and each adverse party if known to the litigant. [¶] (2) The date of birth of the litigant, and of each adverse party if known to the litigant. [¶] (3) The name of any person paid by the litigant to prepare, or to assist in the preparation of, the documents presented to the court, and the amount of money paid. [¶] The information furnished by the litigant shall be used by the court in determining his or her ability to pay all or a portion of the fees and costs. [¶] (c) At any time within three years after the court has granted a litigant permission to proceed in forma pauperis, the clerk of the court, county financial officer, or other appropriate county officer may notify the court of any changed financial circumstances which may enable the litigant to pay all or a portion of the fees and costs which had been waived. The court may authorize the clerk of the court, county financial officer or other appropriate county officer to require the litigant to appear before and be examined by the court; provided, that no litigant shall be required to appear more than once in any four-month period. The court may then order the litigant to pay to the county such sum and in such manner as the court believes is compatible with the litigant's financial ability. [¶] In any action or proceeding in which the litigant whose fees and costs have been waived would have been entitled to recover those fees and costs from another party to the action or proceeding had they been paid, the court may assess the amount of the waived fees and costs against such other party and order the other party to pay that sum to the county. [¶] Execution may be issued on any order provided for in this subdivision in the same manner as on a judgment in a civil action, and not otherwise. [¶] (d) The clerk of the court may dispose of applications for in forma pauperis status three years after the date of filing without the need for microfilming, or the clerk may dispose of applications immediately upon their being microfilmed."

pauperis should be granted and what information should be solicited from the litigant. It provides for recovery of fees if the litigant's financial circumstances improve within three years of the application, and it provides for disposal of applications after three years. Imbedded in the section is subdivision (a)(3), which specifies that the Judicial Council rules shall provide *"for proceeding in forma pauperis at every stage of the proceedings at both the appellate and trial levels of the court system."* (Italics added.)

Rule 985, adopted to implement Government Code section 68511.3, contains subdivisions covering the forms used to apply, eligibility standards, procedures for applying and for determining applications, hearing procedures, confidentiality, and changed circumstances. The final two subdivisions list categories of fees and costs which may be waived. These two lists correlate with two forms used by applicants. The rule contemplates a two-step process under the first step of which a qualifying applicant may obtain an automatic waiver of the following fees and costs: "(i) [Court fees and costs waived by initial application] Court fees and costs waived upon granting an application under rule 982(a)(17) include but are not limited to: [¶] (1) Clerk's fees for filing papers; [¶] (2) Clerk's fees for reasonably necessary certification and copying; [¶] (3) Clerk's fees for issuance of process and certificates; [¶] (4) Clerk's fees for transmittal of papers; [¶] (5) Court appointed interpreter's fees for parties in small claims actions; [¶] (6) Sheriff's, marshal's and constable's fees pursuant to article 7 of title 3 of division 2 of the Government Code; [¶] (7) Reporter's fees for attendance at hearings and trials held within 60 days of the date of the order granting the application." The form used in the first step merely presents the applicant's personal and financial data. (See rule 982(a)(17).) It does not specify which fees and costs the applicant seeks to have waived.

In the second step of the process, the applicant may request waiver of the following fees and costs: "(j) [Additional court fees and costs waived] The court fees and costs that may be waived upon application under rule 982(a)(20) include: [¶] (1) Jury fees and expenses; [¶] (2) Court appointed interpreter's fees for witnesses; [¶] (3) Witness fees of peace officers whose attendance is reasonably necessary for prosecution or defense of the case; [¶] (4) Reporter's fees for attendance at hearings and trials held more than 60 days after the date of the order granting the application; [¶] (5) Witness fees of court appointed experts; [¶] (6) *Other fees or expenses as itemized in the application."* (Italics added.)

Subdivision (b), the "Eligibility" subdivision of rule 985, provides that if the applicant meets eligibility standards, the initial application shall be

granted "and payment of court fees and costs listed in subdivision (i) shall be waived." It provides that the second step application, "under rule 982(a)(20) shall be granted and payment of those court fees and costs listed in subdivision (j) *that the court finds necessary shall be waived*" (italics added) if the applicant meets the eligibility standards.

Arguably, under the rule, if an eligible applicant seeks waiver of reporter's and clerk's transcript fees as "other fees or expenses as itemized in the application" (rule 985(j)(6), Cal. Rules of Court) and satisfies the court that those transcripts are "necessary," the court is required to grant the application for their waiver. Petitioner advances several reasons why the rule cannot be read to permit free reporter's and clerk's transcripts on appeal.

The central theme of petitioner's argument is that the trial court's reading of Government Code section 68511.3 and rule 985 nullifies more than 40 years of decisional law without any expression from the Legislature of an intention to make such a change. A major subtheme is that "under the rule of statutory construction *expressio unius est exclusio alterius,* the omission of transcript costs from those costs and fees enumerated in Rule 985 must be taken as the intentional exclusion of a grant of power to waive transcript costs."

In *Ferguson* v. *Keays* (1971) 4 Cal.3d 649 [94 Cal.Rptr. 398, 484 P.2d 70], the California Supreme Court ruled that appellate courts of this state possess "the inherent power to permit indigent civil litigants to seek appellate relief without the payment of the statutory filing fee." (*Id.,* at p. 652.) The court explained the development of California law as follows: "Although several states and the federal government have enacted statutory provisions relieving indigents from various fees and costs at the trial or appellate level of civil litigation, California has no such legislation. However, it was held in *Martin* v. *Superior Court,* 176 Cal. 289 [168 P. 135], that our trial courts have the inherent power, deriving from common law usage, to permit an indigent civil litigant to sue in forma pauperis. [¶] Subsequent California cases have followed *Martin* to the extent of recognizing an inherent power in the trial courts to waive various fees and costs on behalf of indigent litigants in civil actions. (See *Isrin* v. *Superior Court,* 63 Cal.2d 153 [45 Cal.Rptr. 320, 403 P.2d 728] (jury fees); *Majors* v. *Superior Court of Alameda Co.,* 181 Cal. 270, 276 [184 P. 18, 6 A.L.R. 1274] (jury fees); *Roberts* v. *Superior Court,* 264 Cal.App.2d 235, 241 [70 Cal.Rptr. 226] (bond on appeal to superior court); *Bank of America* v. *Superior Court,* 255 Cal.App.2d 575 [63 Cal.Rptr. 366] (cost bond); *County of Sutter* v. *Superior Court,* 244 Cal.App.2d 770, 775 [53 Cal.Rptr. 424] (cost bond); see also *Fuller* v. *State of California,* 1 Cal.App.3d 664 [82 Cal.Rptr. 78] (denying waver [*sic*] of cost bond on technical grounds); 2

Witkin, Cal. Procedure (2d ed. 1970) Actions, § 215 et seq., pp. 1073-1078.) [¶] On the other hand in *Rucker* v. *Superior Court,* 104 Cal.App. 683, 685 [286 P. 732], involving a request by an indigent for a free transcript on appeal, the court attempted to distinguish *Martin* v. *Superior Court, supra,* on the ground that 'The ruling there made was based upon the rights of the courts of common law to admit to sue *in forma pauperis,* such poor persons as had not ability to pay expenses incidental to the prosecution of actions to enforce their rights. It is not shown that this right extended to appeals or writs of error. The right of appeal is a creature of written law, and finds its authority in the Constitution and statutes of the state. [Citation.]' The court in *Rucker* (p. 685) also pointed out that 'there is no legal mode of requiring payment [for the transcription fees of the official reporter] . . . out of the public treasury.' *Rucker's* holding has been followed in *Agnew* v. *Contractors Safety Assn.,* 216 Cal.App.2d 154, 156 [30 Cal.Rptr. 690], *Legg* v. *Superior Court,* 156 Cal.App.2d 723, 724-725 [320 P.2d 227], and *Kaufman* v. *Brown,* 106 Cal.App.2d 686, 688-689 [235 P.2d 632], each involving the cost of transcripts on appeal. [¶] In the instant cases, we are not faced with the question whether indigents must be given funds by the county or some other source in order to pay transcript fees, publication costs, or other similar third-party charges. Instead, we are solely concerned with the inherent power of an appellate court to waive its own filing fees to accommodate indigent civil litigants. That such power exists, and may be exercised in the absence of statutory provisions to the contrary, seems apparent from our review of the pertinent authorities. [¶] As explained in *Martin* v. *Superior Court, supra,* 176 Cal. 289, 292-296, we must first ascertain whether the courts at common law had this power, for 'The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State.' (Civ. Code, § 22.2.) Although the *Rucker* case, *supra,* without citation of authority, questioned whether at common law the right to sue in forma pauperis is extended to appeals or writs of error, several English cases prior to 1850 (when the common law was incorporated into our jurisprudence) had expressly recognized such a right. (See cases set forth in *Drennan* v. *Andrews* (Eng. 1866) 1 Ch.App. 300, 301, fn. 7.) On the basis of our research, and in the absence of any definitive authority to the contrary, we conclude that the common law courts possessed and exercised the power to permit indigents to appeal in forma pauperis." (*Id.,* at 653-654, fns. omitted.)

The *Ferguson* v. *Keays* court explained that the inherent powers of the appellate courts existed only because of the absence of legislation or Judicial Council rules: "Under article VI, section 6 of the California Constitution, the Judicial Council is empowered, among other things, to 'adopt rules for court administration, practice and procedure, not inconsistent with statute.'

Thus, the Judicial Council could, in the exercise of its rule-making power, promulgate rules governing applications for in forma pauperis relief. Similarly, the Legislature, being entrusted with the responsibility of providing for the maintenance and operation of the appellate judiciary, has the authority to declare under what circumstances, and upon what terms and conditions, indigent litigants should be permitted free access to the appellate courts. However, until the Judicial Council or Legislature has spoken on the subject, the courts properly may exercise their inherent power to assure that the indigent litigant is given reasonable opportunity to obtain appellate relief. . . ." (*Id.,* at 656, fn. omitted.)

Whether motivated by *Ferguson* v. *Keays, supra,* or spurred by other considerations, the Legislature has now acted and the Judicial Council has complied with the Legislature's directive to "formulate and adopt uniform forms and rules of court for litigants proceeding in forma pauperis." We must now determine the effect of the Legislature's action and the Judicial Council's rule. We must decide whether they expanded the previously recognized rights of persons proceeding in forma pauperis, or merely standardized the forms and procedures for seeking the recognized benefits. Legislative history for Government Code section 68511.3 appears to be lacking. Thus, we examine only the measure itself and related statutes.

Government Code section 68511.3 is clear in establishing standards for determining eligibility to proceed in forma pauperis (subd. (a)(6)), in prescribing information to be disclosed by the applicant (subd. (b)), and in delegating to the Judicial Council the authority to standardize forms and procedures (subd. (a), generally). However, ambiguity is interjected by the wording of subdivision (a)(3), requiring that the rules provide "for proceeding in forma pauperis at every stage of the proceedings at both the appellate and trial levels of the court system." It could authorize the Judicial Council only to adopt *forms and procedures* appropriate for use at every stage of the proceedings at both appellate and trial levels, or it could also empower the Judicial Council to authorize waiver of fees traditionally required of even those litigants proceeding in forma pauperis.

Petitioner points to the rule of construction that "it is not to be presumed that the [L]egislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 644 [122 P.2d 526]; *Big Sur Properties* v. *Mott* (1976) 62 Cal.App.3d 99, 105 [132 Cal.Rptr. 835].) We apply that rule to this case. With only minor exceptions, easily distinguished from the routine civil appeal (see, e.g., *Smith* v. *Superior Court* (1974) 41 Cal.App.3d 109 [115 Cal.Rptr. 677]; *Crespo* v. *Superior Court* (1974) 41

Cal.App.3d 115 [115 Cal.Rptr. 681])[3] transcript preparation costs have uniformly been denied civil appellants proceeding in forma pauperis (see, e.g., *Leslie* v. *Roe* (1974) 41 Cal.App.3d 104, 106 [125 Cal.Rptr. 157]; *Legg* v. *Superior Court* (1958) 156 Cal.App.2d 723 [320 P.2d 227]; *Kaufman* v. *Brown* (1951) 106 Cal.App.2d 686 [235 P.2d 632]; *Rucker* v. *Superior Court* (1930) 104 Cal.App. 683 [286 P.2d 732]). The ambiguous language of subdivision (a)(3) of Government Code section 68511.3 cannot be read as clearly expressing an intention to overthrow the established California decisional law principle.

We recognize the force of the argument that the right to appeal in forma pauperis is rendered a hollow right if assertion of appellate contentions requires preparation of an expensive transcript or transcripts. We could envision the Legislature concluding that in forma pauperis appellants should be furnished free transcripts to support their appeals. But because the contrary approach is both standard practice and established decisional law, the Legislature must make clear its intention to provide such a right to in forma pauperis appellants if it makes that decision.[4]

A minor subtheme in petitioner's argument that no new right to free transcripts has been created is that the Legislature has provided elsewhere a procedure for obtaining a free appellate record. In 1980, after enactment of Government Code section 68511.3 but before adoption of rule 985, the Legislature passed Business and Professions Code section 8030.2, creating the "Transcript Reimbursement Fund" for a period of five and one-half years. (Stats. 1980, ch. 1350, § 7, p. 4778, to remain in effect only until June 30, 1986.) Reimbursement from the fund is permitted only where the applicant is a "qualified legal services project, qualified support center, other qualified project, or pro bono attorney," suggesting a legislative preference for appeals that have been evaluated for merit by qualified attorneys.

---

[3]*Smith, supra,* 41 Cal.App.3d 109, was an appeal by a mother denied the opportunity to withdraw her consent to an adoption. Her appeal right was secured by Civil Code section 226a, which gave her a right to a transcript by its reference to juvenile wardship appeals (Welf. & Inst. Code, § 800). In *Crespo, supra,* 41 Cal.App.3d 115, parents protesting involuntary removal of their children received a free transcript as a necessary incident to providing them both the right to appeal and the right to appointed counsel on the appeal.

[4]Real parties argue that the Legislature revealed an intention to provide for free transcripts when it stated at the end of subdivision (a) to Government Code section 68511.3: "Such rules shall further provide that the court shall grant permission to proceed in forma pauperis in any other instance in which, in its discretion, such permission is appropriate because the litigant is unable to proceed without using money which is necessary for the use of the litigant or the litigant's family to provide for the common necessaries of life." However, taken in context it is apparent that that sentence pertains only to the circumstances under which the court shall find an applicant *eligible.* It does not relate to what expenses should be waived for an eligible applicant.

Adoption by the Legislature of Business and Professions Code section 8030.2 lends support to the view that the legislators did not expect Government Code section 68511.3 to empower courts to order free transcripts for indigent appellants. For reimbursement under Business and Professions Code section 8030.8 the litigant must qualify as an "indigent person" and must be represented by qualified counsel. If the Legislature intended by Government Code section 68511.3 to permit waiver of transcript costs for indigents, it would have had little reason to create a transcript reimbursement fund for the benefit of some of those same indigents. There would have been no occasion to reimburse those indigents whose fees were waived pursuant to Government Code section 68511.3 and rule 985.

■ Having concluded that the Legislature did not authorize the Judicial Council to expand the rights of an in forma pauperis appellant, we also explain that we do not read rule 985 as authorizing trial courts to waive clerk's and/or reporter's transcript preparation costs. We read rule 985 as compatible with Government Code section 68511.3.

Petitioner contends that under the doctrine of *expressio unius est esclusio alterius* rule 985's failure to mention transcript preparation costs must be read as excluding them. But a generalized operation of that rule of construction is thwarted by subdivision (j)(6) of rule 985, which permits waiver of "[o]ther fees or expenses as itemized in the application." Nevertheless, we do attach significance to the Judicial Council's omission of clerk's and reporter's transcript costs. It would be curious for the Judicial Council to relegate to the category of "other fees or expenses" the primary expenses faced by most appellants, expenses which in some cases would exceed the costs waived at the trial court level. The Judicial Council's failure to specify transcript preparation costs suggests that the council understood Government Code section 68511.3 as a mandate to develop forms and rules of procedure and not as a mandate to alter the long-standing practice of denying in forma pauperis appellants free transcripts.

Although petitioner made the same arguments to the trial court, that court reached a different conclusion, based in part upon the decision in *Villa* v. *Superior Court* (1981) 124 Cal.App.3d 1063 [177 Cal.Rptr. 752]. There the trial court granted an application to proceed in forma pauperis but denied the applicant's request for a library fee of $7, giving no reason for its denial. The issue before the appellate court was whether the library fee was included in subdivision (i) of rule 985, which failed to specifically enumerate that item. The *Villa* court found library fees to be encompassed in "Clerk's fees for filing papers" in subdivision (i)(1) of the rule, stating that "rule 985(i), encompasses any fee which an indigent must pay in order to take any step

which is essential to initiating or maintaining a civil action." (*Id.*, at p. 1068.)

In our case, referring to the above quoted language, the trial court stated: "Now, *Villa* wasn't concerned with appellate costs. It was concerned with trial court costs, but either this court or the [C]ourt of [A]ppeal has to have jurisdiction to make some sort of order with respect to payment of fees on appeal. And there is no question about it, the appellant can't get off first base unless they get out of the Superior Court, and they can't get out of the Superior Court unless they deposit fees for payment of these two types of transcripts."

The trial court read too much from *Villa*. The library fee in issue there was one of several fees required before plaintiff could initiate her action in superior court. Thus, it was a part of the "filing fee" required by the clerk and could properly be termed one of the "Clerk's fees for filing papers." Here, the appeal could be filed without clerk's and reporter's transcripts.[5]

We conclude that the trial court erred in ordering waiver of the costs for preparation of the clerk's and reporter's transcripts on appeal. However, because the clerk's transcript has already been furnished appellants, we need not issue the writ prayed for. The matter has become partially moot. Let a peremptory writ of mandate issue compelling the trial court to set aside the portion of its order that waived reporter's transcript fees.[6]

Feinberg, J., and Barry-Deal, J., concurred.

---

[5] It could even be prosecuted to completion without those transcripts if an agreed statement (Cal. Rules of Court, rule 6) or a settled statement (Cal. Rules of Court, rule 7) could be presented.

[6] We do not intend our opinion to suggest that the respondent in an appeal has standing to challenge routine court decisions concerning in forma pauperis proceedings. In fact, we do not address the issue of standing because it has not been directly raised or briefed by the parties. However, we do find this particular petition justiciable because any claim that petitioner is not directly affected by the court's order is answered by the joinder of Sonoma County as amicus curiae. The county has been required to shoulder the burden of the trial court's order and is clearly aggrieved.