[Civ. No. 14064. Third Dist. Aug. 17, 1973.]

JOHN G. NORK, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
ALBERT GONZALES et al., Real Parties in Interest.

## COUNSEL

Hardy, Erich & Brown and William A. Wilson for Petitioner.

No appearance for Respondent.

Edward Friedberg and James D. Mart for Real Party in Interest Gonzales.

No appearance for other real party in interest.

## OPINION

**THOMPSON, J.**[*]—Petitioner seeks a writ of mandate and/or prohibition to compel the Sacramento County Superior Court to enter an order granting petitioner's motion for a bond or cash deposit pursuant to the provisions of Code of Civil Procedure section 1029.6, subdivision (e).[1] The said

---

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Code of Civil Procedure section 1029.6, subdivision (e) provides: "Whenever a complaint described in subdivision (a) requests an award of exemplary damages, any defendant against whom the damages are sought may move the court for an ex parte order requiring the plaintiff to file a corporate surety bond, approved by the court, or make a cash deposit in an amount fixed by the court. Upon the filing of the motion, the court shall require the plaintiff to file the bond or make the cash deposit. In no event shall the bond or cash deposit be less than two thousand five hundred dollars ($2,500). The bond or cash deposit shall be conditioned upon payment by the plaintiff of all costs and reasonable attorney's fees incurred by the defendant in defending against the request for the award of exemplary damages, as determined by the court, if the plaintiff fails to recover any exemplary damages.

superior court had refused to make such an order, application having been made therefore. An order to show cause was issued by this court to the respondent court.

Petitioner contends (1) that section 1029.6, subdivision (e), is mandatory and that upon petitioner's filing of the motion for an order requiring a bond or cash deposit the court must grant said motion, and (2) that if the court had any discretion it was abused in denying petitioner's motion.

A summary of the proceedings leading up to our present controversy follows. Real party in interest (hereinafter referred to as plaintiff) filed his complaint for personal injuries against petitioner (hereinafter referred to as defendant) on November 17, 1972, alleging in substance that defendant's conduct as a medical practitioner in operating on plaintiff without informing plaintiff of more conservative treatment available was wilful, malicious and fraudulent and done with the intention on defendant's part to induce plaintiff to submit to a diagnostic myelogram and surgery thereby increasing defendant's income; and further that defendant was not competent to perform such surgery and concealed this fact from plaintiff.. Plaintiff sought both general and punitive damages, the latter in the amount of $1,000,000. On April 9, 1973, defendant filed his motion for an order requiring plaintiff to post a bond or cash deposit pursuant to the provisions of section 1029.6, subdivision (e), on the grounds that exemplary damages were sought against defendant. Said motion was noticed and heard on April 20, 1973, and denied without comment. We are not informed why no order was sought to require the posting of a bond on that part of the action seeking general damages. (§ 1029.6, subds. (a) through (d).)

Defendant contends that no discretion is left to the trial court but to require the bond or deposit in some sum not less than the statutory minimum of $2,500. The very language of the statute appears to bear out this interpretation. The word "shall" is used and no ambiguity exists to make it appear that the Legislature meant anything else. Therefore it must follow that if the statute is without any infirmity, constitutional or otherwise, the trial court abused its discretion in denying defendant's motion.

For reasons we will discuss later, we do not at this time consider any questions concerning the possible indigency of plaintiff nor shall we discuss

The order requiring the bond or cash deposit shall require the bond to be filed or cash deposit to be made with the clerk of the court not later than 30 days after the order is served. If the bond is not filed or the cash deposit is not made within such period, upon the motion of the defendant, the court shall strike the portion of the complaint which requests the award of exemplary damages."

the limitation of section 1029.6, subdivision (e), to practitioners of the medical arts as unconstitutionally creating a favored class. We limit our discussion strictly to the issue of whether section 1029.6, subdivision (e), is unconstitutional as possibly violating the due process requirements of the Fifth and Fourteenth Amendments of the United States Constitution.

We are somewhat at a loss to understand the reasons for so great a variance in the provisions of section 1029.6 (subds. (a) through (d)) enacted in 1969 and section 1029.6, subdivision (e), enacted in 1972. Both relate to what may be generally termed medical malpractice suits. Section 1029.6 (subds. (a) through (d)) applies to such suits wherein compensatory damages are sought, setting forth comprehensive procedures for hearings on such issues as the ability of plaintiff to furnish security for costs, the merit of his suit or lack thereof and the fixing of a maximum bond of $500 for one defendant and $1,000 for two or more defendants. But when the complaint contains a prayer for exemplary damages, section 1029.6, subdivision (e), comes into play. Here we find that the order is made ex parte, no showing of merit or lack thereof is required, an arbitrary minimum bond or cash deposit of $2,500 is required, no maximum ceiling is set and no proof is required as to the probable costs or attorney's fees likely to be incurred by the defendant seeking the bond. If such a bond so fixed is not posted within 30 days the cause of action for exemplary damages must be dismissed. Plaintiff contends that subdivision (e) of section 1029.6 should be read in conjunction with subdivisions (a) through (d) of said section, but we find no merit in this strained and artificial interpretation. In this case a noticed hearing was had but its effectiveness is dubious at best since no standards were provided for the court to follow in fixing the amount of the bond and the conditions thereof.

The fundamental question in any event is whether there is any exigency here present which would permit a dispensing with notice, with hearings, and with standards of proof in such areas as the need for a bond, its reasonable amount, and the ability of the plaintiff to furnish it. The claim is made that when punitive damages are sought, reckless and frivolous charges are often made against medical practitioners to their and possibly society's detriment. We do not have to quarrel with the Legislature as to its assessment of the problem. There may well be a serious problem here which requires a legislative remedy. And we are well aware that it is our duty to uphold legislative action if we can find any legal and constitutional basis for so doing. (See *Jones-Hamilton Co.* v. *Franchise Tax. Bd.* (1968) 268 Cal.App.2d 343, 349 [73 Cal.Rptr. 896].) Had the Legislature applied a uniform procedure internally within section 1029.6 providing the same safeguards for determining what if any bonds should be required for com-

plaints seeking punitive damages as it did for complaints seeking compensatory damages we would be on firmer ground in upholding section 1029.6 in its entirety. But as it is presently written, section 1029.6, subdivision (e), appears to have constitutionally fatal deficiencies.

We would preliminarily observe that just as *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933], created ever enlarging waves which eroded many time-honored precedents in the field of searches and seizures, and *Brown* v. *Board of Education* (1953) 347 U.S. 483 [98 L.Ed. 873, 74 S.Ct. 686, 38 A.L.R.2d 1180] did likewise in the civil rights field, so has the case in *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820] wrought many changes in the field of summary remedies. Among the "casualties" are prejudgment wage garnishments (*McCallop* v. *Carberry* (1970) 1 Cal. 3d 903 [83 Cal.Rptr. 666, 464 P.2d 122]), claim and delivery procedures (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]), prejudgment attachment procedures (*Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]), innkeepers' liens (*Klim* v. *Jones* (N.D.Cal. 1970) 315 F.Supp. 109). The list will no doubt grow as other summary remedies are challenged. There are, of course, many cases in other jurisdictions similarly reflecting the impact of *Sniadach*.[2]

The constitutional infirmities which have proved the undoing of statutes relating to summary remedies have these common denominators, the taking of property, even temporarily, and the absence of any sufficient due process hearing before such taking. We must ask ourselves: Does the statute before us contain such infirmities? Even the most cursory examination discloses that it does. No hearing of any kind is required since the proceeding is ex parte. Lest it be argued that a bond is not a taking, we cite *Brooks* v. *Small Claims Court* (1973) 8 Cal.3d 661, 667 [105 Cal.Rptr.

---

[2]To no one's surprise the *Sniadach* case has produced a large number of law review articles, see Winter, *Constitutional Law—Due Process—The Fuentes Case—Sniadach Made Clear* (1972) 22 De Paul L.Rev. 499; *Attachment and Garnishment— Constitutional Law—Due Process of Law—Garnishment of Wages Prior to Judgment Is a Denial of Due Process: The Sniadach Case and Its Implications for Related Areas of the Law* (1970) 68 Mich. L.Rev. 986; *Procedural Due Process—The Prior Hearing Rule and the Demise of Ex Parte Remedies* (1973) 53 B.U. L.Rev. 41; *Sniadach and Summary Procedures: The Constitution Comes To The Marketplace* (1972) 5 Ind. Legal Forum 300; *Constitutional Law: Replevin Statute Authorizing Seizure of Property Without Notice and Hearing Held Denial of Due Process and Seizure of Property Under Such a Statute Without Warrant Violates the Fourth Amendment* (1971) 55 Minn. L.Rev. 634; *Due Process, Replevin, and Summary Remedies: What Sniadach Hath Wrought* (1973) 22 Catholic U. L.Rev. 667.

785, 504 P.2d 1249], "[i]f the defendant should secure an undertaking or bond [under the provisions of section 117*l* to perfect a small claims court appeal] from a corporate surety [Code Civ. Proc., § 1056], he would be deprived of the nonrefundable premium. Further, additional collateral is often required in order to qualify for a bond; although this can be recovered if defendant prevails on appeal, he is nevertheless deprived of its use in the meantime. Under *Sniadach* and its progeny (*McCallop, Cline, Blair, Randone* and *Fuentes*), this of course is a taking. If the defendant instead deposits money in lieu of an undertaking ( § 117*ll*), the same result follows. This deprivation is indeed a taking, in spite of its temporary nature. 'Any significant taking of property by the State is within the purview of the Due Process Clause. While the length and consequent severity of a deprivation may be another factor to weigh in determining the appropriate form of the hearing, it is not decisive of the basic right to a prior hearing of some kind.' (*Fuentes* v. *Shevin, supra,* 407 U.S. 67, 86 [32 L.Ed.2d 556, 573].)"

While it is true that in striking down summary proceedings in prejudgment garnishments, claim and delivery, etc., the courts have spoken of special kinds of property involved such as wages, household goods, etc., nevertheless at the heart of each decision is a judicial declaration that a taking without notice or hearing is a deprivation of due process. In the words of Justice Douglas in *Sniadach, supra,* 395 U.S. 337, at page 342 [23 L.Ed.2d 349, at page 354], "Where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing [citation] this prejudgment garnishment procedure violates the fundamental principles of due process." The case of *Brooks* v. *Small Claims Court, supra,* even more emphatically obliterates any constitutional distinction between classes of property or classes of litigants by stating at page 670, "Respondent courts [small claims courts] rely heavily upon defendant's failure to seek in forma pauperis status from respondent superior court. They claim that, had this been done, such court could have waived the undertaking requirement for her appeal. Conversely, it is argued, if she is not indigent and so cannot qualify for in forma pauperis status, then there can be no showing that the undertaking requirement is in any way onerous as to her. However, this argument totally ignores the key constitutional issue before us: Is the undertaking requirement a taking of property in violation of due process? It is immaterial that a defendant can afford to be deprived of his property, or that other means are available to alleviate his situation. Denial of due process affects the rich as well as the poor." It would further seem that *Fuentes* v. *Shevin,* 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983], sets at naught the sugges-

tion of the California Supreme Court in *Randone* v. *Appellate Department, supra,* 5 Cal.3d 536, 558, that there might be situations in which private litigants might have the right in some circumstances not involving necessities of life to summary remedies, stating at pages 89-90 [32 L.Ed.2d at page 575], "No doubt, there may be many gradations in the 'importance' or 'necessity' of various consumer goods. Stoves could be compared to television sets, or beds could be compared to tables. But if the root principle of procedural due process is to be applied with objectivity, it cannot rest on such distinctions. The Fourteenth Amendment speaks of 'property' generally. And, under our free enterprise system, an individual's choices in the marketplace are respected, however unwise they may seem to someone else. It is not the business of a court adjudicating due process rights to make its own critical evaluation of those choices and protect only the ones that, by its own lights, are 'necessary.' " (Fn. omitted.) *Fuentes* goes on to state that summary remedies must be restricted to matters involving a general public interest requiring an immediate taking, such as contaminated foods, insolvent banks, income tax liens, etc. (*Fuentes* v. *Shevin, supra,* at pp. 90-93 [32 L.Ed.2d at pp. 576-577].)

We do not, as we have noted earlier, pass upon the question whether or not the Legislature may be able to adopt a statute immune from attack to correct an abuse of claims for exemplary damages against members of the medical profession. Possibly the Legislature could determine that such persons are peculiarly vulnerable to this particular type of litigation. Quite evidently the Legislature believed that such a problem exists from such enactment of the Code of Civil Procedure section 1029.6, subdivision (e), and quite possibly legislative findings would demonstrate that abuses are present and that their continuance not only threatens doctors but the public as well. We elaborate upon these latter points for the sole purpose of making it abundantly clear that we decide this case without any suggestion that it may or may not be possible for the Legislature to carve out an area in the domain of the health sciences to afford protection against frivolous and unmeritorious malpractice suits seeking punitive damages, if such a problem exists.

However, if the Legislature should undertake to amend section 1029.6, subdivision (e), to bring it into conformity with the United States Constitution, such new statute should be written with a view to avoiding the dual pitfalls of failing to provide for due process and equal protection. We cite Corporations Code section 834 as a possible model, though admittedly said section has not been tested by the more stringent requirements of *Sniadach* and its progeny. In Corporations Code section 834, the Legislature undertook to remedy the evils attendant upon frivolous derivative

stockholders' suits just as the Legislature here sought to remedy a "wrong," with regard to the medical profession if such there be in the alleged proliferation of unmeritorious medical malpractice suits seeking punitive damages. Corporations Code section 834, however, is hedged about with provisions which provide for hearings, notice, evidentiary findings of unmeritoriousness and other safeguards not found in section 1029.6, subdivision (e).

The writ is denied, the order to show cause is discharged.

Richardson, P. J., and Friedman, J., concurred.