[L.A.No. 30360. In Bank. May 29, 1975.]

JOYCE BEAUDREAU, a Minor, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
WILLIAM J. JOHNSTON, Individually and as
Superintendent, etc., et al., Real Parties in Interest.

Ernest L. Aubry for Petitioners.

No appearance for Respondent.

John H. Larson, County Counsel, Gregory L. James and Ronald J. Selgrath, Deputy County Counsel, for Real Parties in Interest.

## OPINION

**SULLIVAN, J.**—Petitioners seek a writ of mandate to compel respondent superior court to permit them to prosecute a pending action against

real parties in interest without filing an undertaking for costs as prescribed by Government Code sections 947 and 951.[1] Petitioners contend that these statutes violate the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and article I, sections 7 and 15, of the California Constitution.

The proceedings giving rise to the present controversy may be briefly summarized. On May 23, 1974, petitioners (hereafter plaintiffs), consisting of 16 minors, suing as public school students, and 7 parents of students attending public schools, brought the underlying action against real parties in interest (hereafter defendants) in respondent superior court claiming a deprivation of rights in violation of the Elementary and Secondary Education Act of 1965 (20 U.S.C.A. § 241a et seq.). Defendants are the Los Angeles Unified School District (District), a public entity, seven members of the District's governing board (Los Angeles City Board of Education), the District's superintendent of schools (William J. Johnston), and the District's director of compensatory education programs (William Anton).

Defendants thereupon filed in said court and served upon plaintiffs seven documents demanding that they post undertakings in amounts totaling $25,700 as security for allowable costs which might be awarded against said plaintiffs. These demands were made without prior court order pursuant to sections 947[2] and 951,[3] which permit public entities and public employees or former public employees to impose such a requirement in any action brought against them. Plaintiffs moved to

---

[1] Hereafter, unless otherwise specified, all section references are to the Government Code.

[2] Section 947 provides in relevant part as follows: "(a) At any time after the filing of the complaint in any action against a public entity, the public entity may file and serve a demand for a written undertaking on the part of each plaintiff as security for the allowable costs which may be awarded against such plaintiff. The undertaking shall be in the amount of one hundred dollars ($100) for each plaintiff or in the case of multiple plaintiffs in the amount of two hundred dollars ($200), or such greater sum as the court shall fix upon good cause shown, with at least two sufficient sureties, to be approved by the court. Unless the plaintiff files such undertaking within 20 days after service of a demand therefor, his action shall be dismissed."

[3] Section 951 similarly provides in relevant part: "(a) At any time after the filing of the complaint in any action against a public employee or former public employee, if a public entity undertakes to provide for the defense of the action, the attorney for the public employee may file and serve a demand for a written undertaking on the part of each plaintiff as security for the allowable costs which may be awarded against such plaintiff. The undertaking shall be in the amount of one hundred dollars ($100), or such greater sum as the court shall fix upon good cause shown, with at least two sufficient sureties, to be approved by the court. Unless the plaintiff files such undertaking within 20 days after service of the demand therefor, his action shall be dismissed."

quash these demands for the filing of undertakings on the following grounds: (1) That the amounts demanded by defendants exceeded the sums permitted by sections 947 and 951 without a showing of "good cause," no such showing having been made by defendants; (2) that said sections permit a summary taking of property in violation of the due process clauses of the United States and California Constitutions; and (3) that the sections create irrational classifications, violative of federal and state equal protection principles.

At the hearing the trial court upheld the statutes against both constitutional attacks,[4] but concluded that the amounts demanded by defendants exceeded statutory limitations absent a showing of good cause. Determining that sections 947 and 951 authorized defendants to require plaintiffs to post security in the aggregate amount of $20,900 as a condition to continuing prosecution of their lawsuit, the court ordered plaintiffs to file an undertaking in such amount within 20 days, stating that failure to do so would result in the dismissal of their action.

Plaintiffs thereupon filed the instant petition. They seek relief, however, only on the ground of denial of due process.[5] We issued an alternative writ of mandate, having determined that " 'there is no adequate remedy in the ordinary course of law and that [this] case is a proper one for the exercise of our original jurisdiction.' [Citations.]" (*Brooks* v. *Small Claims Court* (1973) 8 Cal.3d 661, 663 [105 Cal.Rptr. 785, 504 P.2d 1249].)

■ Turning to the merits of plaintiffs' claim, we first consider the purpose and function of the two statutes. The Legislature enacted sections 947 and 951 in 1963 for the avowed purpose of protecting public entities and public employees against unmeritorious and frivolous litigation.[6]

---

[4]In rejecting the due process attack on these statutes, the court stated that plaintiffs in fact had been given a hearing before they were required to post a bond.

[5]Plaintiffs have abandoned the argument that these statutes violate the equal protection clauses of the federal and state Constitutions.

[6]Defendants urge us to consider the Law Revision Commission comments in determining the legislative purpose underlying the adoption of these statutes. These comments are fully set forth in Van Alstyne, California Government Tort Liability (Cont.Ed.Bar 1964), pages 784-786 and pages 801-802, and state in relevant part: "The Commission has concluded that all public entities are entitled to protection against unmeritorious litigation, since local public entities are as likely as the State to be subjected to such actions. At the same time, however, no unreasonable burden should be imposed upon a person who has a meritorious cause of action.

"The Commission recommends, therefore, that all public entities be authorized, in their discretion, to require the plaintiff to file an undertaking for costs in any action

In imposing on plaintiffs in actions against public entities or public employees a requirement for an undertaking for costs not generally imposed on plaintiffs in actions against private persons or corporations, the Legislature apparently determined that in the first type of actions there exists a greater likelihood of unmeritorious litigation. Thus, sections 947 and 951 were purportedly designed "to deter litigation-prone persons from instituting unfounded litigation," (see fn. 6 *ante*) against public entities and employees, while at the same time imposing "no unreasonable burden . . . upon a person who has a meritorious cause of action." (Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar 1964) Cal. Law Rev. Com. Comment re § 947, p. 785.)

However, the procedure prescribed by these statutes to effectuate such purpose does not distinguish between the classes of plaintiffs on the basis of the merit of the actions brought by them. Rather "in *any* action" (§§ 947, 951, italics added; see fns. 2 and 3 *ante*) brought against a public entity, public employee or former public employee, such defendants are given the absolute right to demand an undertaking for costs as specified by the respective sections.

If a defendant limits his demand to the amount automatically allowable by statute ($200 total in the case of multiple plaintiffs under § 947, and $100 per plaintiff under § 951), no prior or subsequent judicial approval is required. However, each statute addi-

against a public entity. There is no need to require an undertaking for counsel fees since the protection afforded public entities by an undertaking for costs is sufficient to deter litigation-prone persons from instituting unfounded litigation. Moreover, making the undertaking for costs entirely discretionary eliminates any need for an exception like that found in Section 647 for certain actions involving motor vehicles, since it is expected that the discretion vested in the public entities will be judiciously exercised. To further assure that no unreasonable burden is placed upon a meritorious litigant, the minimum amount of the undertaking should be fixed at $100, and, while the court on motion should have authority to require an undertaking in excess of this minimum, the public entity should have the burden of showing good cause for increasing the amount of the required undertaking.

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The Commission further recommends that the protection which would be afforded public entities under this recommendation [§ 947] be extended to actions brought against public employees where the public entity furnishes the defense. This will discourage a plaintiff from bringing an action against the employee alone (instead of against the public entity) merely to avoid the undertaking. Moreover, unmeritorious litigation against public employees should be discouraged to the same extent as litigation against the public entity itself is discouraged."

(See also, *County of Sutter* v. *Superior Court* (1966) 244 Cal.App.2d 770, 775 [53 Cal.Rptr. 424]; *Boyer* v. *County of Contra Costa* (1965) 235 Cal.App.2d 111, 117 [45 Cal.Rptr. 58]; *Vinnicombe* v. *State of California* (1959) 172 Cal.App.2d 54, 58 [341 P.2d 705].)

tionally provides that upon application of the defendant (apparently ex parte) and upon "good cause shown," the court may fix undertakings in greater amounts. (See, e.g., *Fuller* v. *State of California* (1969) 1 Cal.App.3d 664, 671 [82 Cal.Rptr. 78].) Yet even in this instance neither section makes any provision for a hearing on the questions of "good cause" or a reasonably greater amount. Nor do the statutes fix a maximum for such court-ordered undertaking or establish standards by which the court's determination should be made. Finally, it is provided that unless the plaintiff files the undertaking within 20 days after service of the demand therefor, the court is required to dismiss his action.[7]

█ It is convenient to note at this point that under applicable decisional law the plaintiff, upon motion for relief from an undertaking requirement, is entitled to a hearing so that it may be determined whether or not the plaintiff qualifies to proceed in forma pauperis[8] (*Conover* v. *Hall* (1974) 11 Cal.3d 842, 850-853 [114 Cal.Rptr. 642, 523 P.2d 682]; *County of Sutter* v. *Superior Court, supra,* 244 Cal.App.2d 770, 773-775) or the defendant's demand exceeds the amount authorized by statute or the defendant is a public entity or public employee within the meaning of the sections or the legislation itself is valid.

The statutes now before us make no provision for a hearing on the question of the merit of the plaintiff's action or on the reciprocal questions of the necessity of an undertaking for the defendant's protection and the reasonableness of its amount. If the plaintiff is not indigent and if the defendant public entity or public employee makes a demand within the scope of the statute, the court has no discretion to dispense with the undertaking requirement. The plaintiff must then file the undertaking for costs or suffer dismissal of his action.

As previously indicated, plaintiffs contend that sections 947 and 951 violate due process of law as guaranteed by the Fifth and Fourteenth

---

[7]Each statute provides that: "Unless the plaintiff files such undertaking within 20 days after service of a demand therefor, his action *shall* be dismissed." (Italics added.) It has been held that "the filing of the . . . [undertaking] is not jurisdictional. The trial court should use a broad discretion in permitting the . . . [undertaking] to be filed late, if the defendant has not been prejudiced by such filing." (*Boyer* v. *County of Contra Costa, supra,* 235 Cal.App.2d 111, 117; see also *Hayward Unified Sch. Dist.* v. *Superior Court* (1965) 233 Cal.App.2d 737, 741-742 [43 Cal.Rptr. 895].)

[8]In *Conover* v. *Hall, supra,* 11 Cal.3d at pages 850-853, we held that a court granting an injunction had the discretion to relieve the plaintiff upon the ground of indigency from the requirement of an injunction bond under section 529 of the Code of Civil Procedure despite the fact that the plaintiff did not proceed formally in forma pauperis and that the court did not conduct a formal inquiry into the plaintiff's assets where it could reasonably conclude from the facts before it that the plaintiff was poor and could not afford to post the bond.

Amendments to the United States Constitution and article I, sections 7 and 15 of the California Constitution. Their position is that the statutes deprive them of property without a hearing and therefore constitute a taking of property without due process of law.

Recently in *Brooks* v. *Small Claims Court, supra,* 8 Cal.3d 661, we were called upon to determine the constitutionality in the light of due process principles of the requirement of an undertaking as a precondition for an appeal by a defendant from an adverse judgment entered in a small claims court. We began by observing that the concept of a "taking" of property has been extended significantly and that "[b]eginning with the United States Supreme Court ruling in *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820], and continuing with California decisions interpreting *Sniadach,* this concept has been held to include even temporary deprivations of property." (*Id.* at p. 666.) We thereupon reviewed our decisions in detail to the end of emphasizing that "[t]his court has consistently applied the rationale of *Sniadach* to strike down summary procedures which deprive persons of their property pending a hearing." (*Id.* at p. 666.)

Holding the requirement of an undertaking in *Brooks* to be a denial of due process of law, we said: "In view of these decisions, it is manifest that the requirement of an undertaking in connection with an appeal from a judgment entered in a small claims court constitutes a taking of property prior to a due process hearing with right to counsel. The first opportunity for representation by counsel arises at the trial de novo after appeal. But the appeal is conditioned on the filing of an undertaking or the depositing of money in lieu thereof. If the defendant should secure an undertaking or bond [pursuant to Code of Civil Procedure section 117*l*] from a corporate surety [pursuant to Code of Civil Procedure section 1056], he would be deprived of the nonrefundable premium. Further, additional collateral is often required in order to qualify for a bond; although this can be recovered if defendant prevails on appeal, he is nevertheless deprived of its use in the meantime. Under *Sniadach* and its progeny *(McCallop, Cline, Blair, Randone* and *Fuentes),* this of course is a taking. If the defendant instead deposits money in lieu of an undertaking [pursuant to Code of Civil Procedure section 117*ll*] the same result follows. This deprivation is indeed a taking, in spite of its temporary nature." (8 Cal.3d at p. 667.)[9]

---

[9] We also quoted from *Fuentes* v. *Shevin* (1972) 407 U.S. 67, 86 [32 L.Ed.2d 556, 573, 92 S.Ct. 1983]: " 'Any significant taking of property by the State is within the purview of the Due Process Clause. While the length and consequent severity of a deprivation may be another factor to weigh in determining the appropriate form of hearing, it is not decisive of the basic right to a prior hearing of some kind.' " (8 Cal.3d at pp. 667-668.)

Subjecting the statutes now before us to the spotlight of the foregoing rationale, we are convinced that they involve a two-fold taking of property. To put it another way, a plaintiff is deprived of his property whether he complies with the statute and files the demanded undertaking or refuses to comply and incurs dismissal of his action. If he takes the former course and secures his undertaking from a corporate surety (see Code Civ. Proc., § 1056)[10] as we pointed out in *Brooks* (see fn. 9 *ante* and accompanying text) he will at least be deprived of his nonrefundable premium; if he deposits money in court in lieu of an undertaking, he will be deprived of its use during the pendency of the action.[11]

If the plaintiff takes the latter course and incurs dismissal of his action, he will also have suffered a "taking" of his property, since his claim against a public entity or public employee—assuming that it is bona fide and potentially meritorious—is a "property interest" within the meaning of the due process clause. In *Board of Regents* v. *Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701], the United States Supreme Court observed that property interests safeguarded by procedural due process may take many forms. Explicating this concept, the court stated: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims."[12] (*Id.* at pp. 576, 577 [33 L.Ed.2d

[10] Section 1056 of the Code of Civil Procedure provides: "In all cases where an undertaking or bond, with any number of sureties is authorized or required by any provision of this code, or of any law of this State, any corporate or reciprocal insurer, possessing a certificate of authority from the Insurance Commissioner authorizing it to write surety insurance defined in Section 105 of the Insurance Code may become and shall be accepted as security or as sole and sufficient surety upon such undertaking or bond, and such corporate surety shall be subject to all the liabilities and entitled to all the rights of natural persons' sureties."

[11] Plaintiffs state that the approximate charge for the undertaking demanded in the instant case would be 1 percent of the principal amount ($20,900) or $209 per annum. Furthermore, it is urged that it would be necessary for all plaintiffs to assume joint and several liability on the entire principal of $20,900, securing this amount by assignment to the surety company during the pendency of the action of a savings account showing a balance equal to the above principal amount. A deposit of said sum with the clerk of the court as an alternative would not be interest bearing.

For other cases expressly or impliedly holding that the requirement of an undertaking constitutes a taking of "property," see *Bell* v. *Burson* (1971) 402 U.S. 535, 539 [29 L.Ed.2d 90, 94, 91 S.Ct. 1586], and *Nork* v. *Superior Court* (1973) 33 Cal.App.3d 997, 1002 [109 Cal.Rptr. 428].

[12] Thus, it has been held that a person has a property interest in welfare benefits they are receiving pursuant to statute (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 261 [25 L.Ed.2d

at pp. 560, 561]; see also *Perry* v. *Sindermann* (1972) 408 U.S. 593, 601 [33 L.Ed.2d 570, 579-580, 92 S.Ct. 2694].) A meritorious action against a public entity or public employee clearly connotes a "legitimate claim of entitlement" within the meaning of *Roth.*

In sum, our conclusion that the operation of sections 947 and 951 results in a "taking" of property within the meaning of established due process principles is in harmony with all of the recent decisions of this court. We have repeatedly recognized that statutes providing a procedure according to which one litigant can be forced to relinquish an interest in his property for the benefit of another effectuate a "taking" of property, entitling the former to prior procedural safeguards. Accordingly we have held accountable to the principles of procedural due process California statutes dealing with wage garnishment (*McCallop* v. *Carberry* (1970) 1 Cal.3d 903 [83 Cal.Rptr. 666, 464 P.2d 122]), claim and delivery (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]), prejudgment attachment (*Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]), and small claims appeals (*Brooks* v. *Small Claims Court, supra,* 8 Cal.3d 661).

The statutes under attack in the case at bench effectuate a similar "taking" which falls within the reach of due process protection. Pursuant to their provisions, a plaintiff may be required to relinquish property either by filing an undertaking or by suffering dismissal of his action. The professed purpose to be served by subjecting him to this burden is the protection of his adversary against the costs of defending unmeritorious lawsuits. (See fn. 6 *ante.*) Unlike filing fees which are exacted by the state as a payment for a service it provides, the requirement of sections 947 and 951 affords no reciprocal benefit to the plaintiff; these sections help only the defendant. (*Conover* v. *Hall, supra,* 11 Cal.3d at p. 851.) Nor is the result under these two statutes any less offensive to due process principles or immune from their reach because in this situation, as distinguished from that in our previous decisions, the "taking" is suffered by the plaintiff rather than the defendant.

287, 295, 90 S.Ct. 1011]), in the continuation of their driving privileges (*Bell* v. *Burson, supra,* 402 U.S. at p. 539; *Rios* v. *Cozens* (1972) 7 Cal.3d 792 [103 Cal.Rptr. 299, 499 P.2d 979], vacated sub nom. *Dept. Motor Vehicles of California* v. *Rios* (1973) 410 U.S. 425 [35 L.Ed.2d 398, 93 S.Ct. 1019], new dec. *Rios* v. *Cozens* (1973) 9 Cal.3d 454 [107 Cal.Rptr. 784, 509 P.2d 696]), and in the continuation of public employment, where the position is held pursuant to tenure provisions prohibiting dismissal absent cause (*Board of Regents* v. *Roth, supra,* 408 U.S. at pp. 576-577 [33 L.Ed.2d at pp. 560-561]), or where state officials have "promulgated and fostered" rules and understandings which have led the employee to reasonably believe that his contract will be renewed absent sufficient cause (*Perry* v. *Sindermann, supra,* 408 U.S. at pp. 602-603 [33 L.Ed.2d at pp. 580-581]).

Having concluded that sections 947 and 951 effectuate a taking of property, we proceed to determine what procedural safeguards are required under the particular circumstances. ■ We start with the basic proposition that in every case involving a deprivation of property within the purview of the due process clause, the Constitution requires some form of notice and a hearing. (*North Georgia Finishing, Inc.* v. *Di-Chem, Inc.* (1975) 419 U.S. 601 [42 L.Ed.2d 751, 95 S.Ct. 719]; *Goss* v. *Lopez* (1975) 419 U.S. 565 [42 L.Ed.2d 725, 95 S.Ct. 729]; *Mitchell* v. *W. T. Grant Co.* (1974) 416 U.S. 600, 624 [40 L.Ed.2d 406, 423, 94 S.Ct. 1895]; concurring opn. Justice Powell; *Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 872-873, 70 S.Ct. 652]; *Adams* v. *Department of Motor Vehicles* (1974) 11 Cal.3d 146, 151-152 [113 Cal.Rptr. 145, 520 P.2d 961].) Absent extraordinary circumstances justifying resort to summary procedures, this hearing must take place *before* an individual is deprived of a significant property interest. (*Adams* v. *Department of Motor Vehicles, supra,* 11 Cal.3d at p. 155; *Brooks* v. *Small Claims Court, supra,* 8 Cal.3d at pp. 667-668; *Randone* v. *Appellate Department, supra,* 5 Cal.3d at p. 547; *Blair* v. *Pitchess, supra,* 5 Cal.3d at p. 278; *McCallop* v. *Carberry, supra,* 1 Cal.3d at p. 907.) The fact that the individual may later recover the property if he prevails at a post-deprivation hearing does not satisfy constitutional requirements. "[A] temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment, and . . . must be preceded by a fair hearing." (*Brooks* v. *Small Claims Court, supra,* 8 Cal.3d at p. 667.)

"The formality and procedural requisites for the hearing can vary" (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 378 [28 L.Ed.2d 113, 119, 91 S.Ct. 780]), and are determined largely by balancing the interests of the state against the private interest affected by governmental action. (*Goldberg* v. *Kelly, supra,* 397 U.S. at p. 263 [25 L.Ed.2d at p. 296]; *Cafeteria Workers* v. *McElroy* (1961) 367 U.S. 886, 895 [6 L.Ed.2d 1230, 1236, 81 S.Ct. 1743].) However, in every case, "[t]he hearing required by the Due Process Clause must be 'meaningful,' *Armstrong* v. *Manzo,* 380 U.S. 545, 552 (1965) and 'appropriate to the nature of the case.' *Mullane* v. *Central Hanover Bank & Trust Co., supra,* at 313. It is a proposition which hardly seems to need explication that a hearing which excludes consideration of an element essential to the decision . . . does not meet this standard." (*Bell* v. *Burson supra,* 402 U.S. at pp. 541-542 [29 L.Ed.2d at p. 96].)

Applying this analysis in *Bell* v. *Burson, supra,* 402 U.S. 535, the United States Supreme Court struck down as unconstitutional a Georgia

statute providing for suspension of the driver's license of an uninsured motorist involved in an accident unless he posted security for the amount of damage claimed by an aggrieved party, without a prior hearing on the question of his responsibility for the accident. The high court reasoned: "Since the only purpose of the provisions before us is to obtain security from which to pay any judgments against the licensee resulting from the accident, we hold that procedural due process will be satisfied by an inquiry limited to the determination whether there is a reasonable possibility of judgments in the amounts claimed being rendered against the licensee. . . . [¶] In cases where there is no reasonable possibility of a judgment being rendered against a licensee, Georgia's interest in protecting a claimant from the possibility of an unrecoverable judgment is not, within the context of the State's fault-oriented scheme, a justification for denying the process due its citizens."[13] (*Bell* v. *Burson, supra,* 402 U.S. at p. 540 [29 L.Ed.2d at p. 95].)

Similarly, we have held that a statute may not under ordinary circumstances authorize prejudgment attachment, garnishment, or replevin of a debtor's property without prior notice and a hearing on the probable validity of the creditor's claim. (*Randone* v. *Appellate Department, supra,* 5 Cal.3d at p. 547; *Blair* v. *Pitchess, supra,* 5 Cal.3d at p. 283; *McCallop* v. *Carberry, supra,* 1 Cal.3d at p. 907.)

In *Nork* v. *Superior Court, supra,* 33 Cal.App.3d 997, a case substantially similar to the one at bench, it was held that the plaintiff claiming exemplary damages in a malpractice action could not be required to post security for costs and attorney fees likely to be incurred by the defendant with respect to such claim without prior notice and a hearing on the questions of the merit of the claim, the reasonable amount of the bond, and the ability of plaintiff to furnish it. (*Id.* at pp. 1000-1001.) In *Nork,* as in the instant case, the purpose of the statute (Code Civ. Proc., § 1029.6, subd. (e)) imposing the requirement of an undertaking was to protect the defendant against reckless and frivolous claims for exemplary damages. Yet under the statutory scheme, *every* plaintiff requesting such damages was required to post a bond in a minimum amount of $2,500 upon the ex parte motion of the defendant. Upon the plaintiff's failure to do so, it was mandatory upon the court to strike that portion of plaintiff's complaint. While not disputing the proffered legislative purpose of

---

[13]Relying upon the California Constitution, we determined that the uninsured motorist is entitled to be personally present at such a hearing, review the evidence against him, and present his own evidence to establish his claim of nonculpability. (*Rios* v. *Cozens, supra,* 7 Cal.3d 792, vacated sub nom. *Dept. Motor Vehicles of California* v. *Rios* (1973) 410 U.S. 425, new dec. *Rios* v. *Cozens* (1973) 9 Cal.3d 454.)

discouraging reckless and frivolous charges against medical practitioners through claims for exemplary damages, the *Nork* court concluded that even the most cursory examination of the statute showed that the statute had "constitutionally fatal deficiencies" (*id.* at p. 1001) in violation of the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution.

Turning to the case at bench, we similarly conclude that sections 947 and 951 cannot withstand constitutional attack. Under the fundamental notions of due process heretofore discussed, the taking to which a plaintiff is subjected under the above statutes must be preceded by a hearing in the particular case in order to determine whether the statutory purpose is promoted by the imposition of the undertaking requirement. As these statutes are purportedly designed to protect public entities and public employees against the cost of defending frivolous lawsuits, a due process hearing would necessarily inquire into the merit of the plaintiff's action as well as into the reasonableness of the amount of the undertaking in the light of the defendant's probable expenses.

The statutes before us make no provision for such a hearing. Every plaintiff who sues a public entity or public employee may be forced either to file an undertaking as security for the defendant's costs or to forego the prosecution of his claim. Absent proof of indigency, the court is given no discretion to dispense with the undertaking requirement if demanded by a qualifying defendant, regardless of the merit of the plaintiff's lawsuit. Furthermore, the legislation specifies no standards for determining the reasonable amount of such undertaking. If the defendant is satisfied to limit its demand to the statutory minimum, judicial approval is not required; if the defendant seeks a greater amount, he must show "good cause." Yet the statutes do not purport to define "good cause" and do not provide that the plaintiff has a right to be heard on this matter. Thus any hearing which the plaintiff may receive on the issue of good cause necessarily "excludes consideration of . . . element[s] essential to the decision . . . ." (*Bell* v. *Burson, supra,* 402 U.S. at p. 542 [29 L.Ed.2d at p. 96].) It would not be a "meaningful" hearing, "appropriate to the nature of the case" and as such would not meet due process standards. (*Armstrong* v. *Manzo, supra,* 380 U.S. at p. 552 [14 L.Ed.2d at pp. 66-67]; *Mullane* v. *Central Hanover Tr. Co., supra,* 339 U.S. at p. 313 [94 L.Ed. at pp. 872-873].)

We do not dispute that the state has a legitimate interest in protecting public entities and their employees against frivolous lawsuits. Nor do we necessarily find fault with the statutory classification distinguishing

between plaintiffs on the basis of whether the parties they sue are public entities or public employees rather than private persons. The Legislature may have had reason to believe that there exists a greater danger of unfounded actions against public, rather than private parties. (See *Vinnicombe* v. *State of California, supra,* 172 Cal.App.2d at p. 59.) We do not say that the requirement of an undertaking is an improper method of effectuating this purpose. We do hold, however, that since this method subjects the plaintiff to a taking of his property, it must satisfy due process principles. This it fails to do so.

We reject as devoid of merit the various arguments advanced by defendants to uphold the statutes under attack. ■ Their first contention is essentially an attempt to denominate the bringing of an action against a public entity or public employee as a "privilege" conferred by statute, which "privilege," it is urged, may be conditioned by the government in any manner it chooses. The fact that the condition imposed is one which offends due process is not, in defendants' view, grounds for its invalidation. This argument, which purports to distinguish between "rights" and "privileges" and to limit due process protection to the former, has been considered and rejected by this court as well as by the United States Supreme Court in a number of cases. (See, e.g., *Goss* v. *Lopez, supra,* 419 U.S. at pp. 572-576 [42 L.Ed.2d at pp. 733-736]; *Perry* v. *Sindermann, supra,* 408 U.S. at p. 601; *Board of Regents* v. *Roth, supra,* 408 U.S. at p. 571 [33 L.Ed.2d at p. 557]; *Bell* v. *Burson, supra,* 402 U.S. at p. 539; *Goldberg* v. *Kelly, supra,* 397 U.S. at pp. 262-263 [25 L.Ed.2d at pp. 295-296].) "While the legislature may elect not to confer a property interest . . . , it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." (*Arnett* v. *Kennedy,* (1974) 416 U.S. 134, 167 [40 L.Ed.2d 15, 40-41, 94 S.Ct. 1633]; concurring opn., Justice Powell.) Since California in recognition of a broader scope of governmental tort liability (see Tort Claims Act of 1963, Gov. Code, div. 3.6, § 810 et seq.) has clearly conferred the right to bring actions against public entities and public employees, it may not interfere with the property interest in a meritorious cause of action by subjecting the plaintiff to an unconstitutional "taking" of his claim as a condition to the prosecution of his suit.

Nor are we persuaded by defendants' argument that California and federal courts have upheld the constitutional validity of statutes authorizing takings by means of procedures similar to that before us in the instant case. Defendants designate Corporations Code section 834 as an example and assert that a comparable provision was upheld against due

process attack by the United States Supreme Court in *Cohen* v. *Beneficial Loan Corp.* (1949) 337 U.S. 541 [93 L.Ed. 1528, 69 S.Ct. 1221].[14] However, even a cursory examination of section 834 reveals that it is devoid of the constitutional defects which plague sections 947 and 951.

In section 834, subdivision (b), of the Corporations Code the Legislature undertook to discourage frivolous derivative stockholders' suits by authorizing the imposition of a security for costs requirement upon shareholders bringing such actions. However, in sharp contrast to the statutes here under attack, section 834 hedges this requirement with provisions for notice, an evidentiary hearing and findings on such issues as the merit of the plaintiff's action and the reasonableness of the expenses likely to be incurred by the defendant. These factors undoubtedly persuaded the Court of Appeal in *Nork* v. *Superior Court, supra,* 33 Cal.App.3d 997, to recommend section 834 as a possible model for a requirement of security for costs designed to deter unmeritorious litigation against particular defendants. (*Id.* at pp. 1003-1004.)

As a final argument, defendants urge that we follow the current trend of United States Supreme Court decisions which indicate a retreat from the court's former position of requiring a *prior* hearing in all cases involving the deprivation of a property interest absent emergency circumstances. In particular, defendants direct our attention to two recent opinions in which the court upheld the constitutional validity of

---

[14]In *Cohen* v. *Beneficial Loan Corp., supra,* 337 U.S. 541, the United States Supreme Court upheld the constitutional validity of a New Jersey statute authorizing a corporation to require minority shareholders bringing a derivative action to post security for the reasonable expenses, including counsel fees, likely to be incurred by the corporation in the litigation. Although it does not appear that the New Jersey statute expressly provided for notice and a hearing before the court required the security, the *Cohen* decision is not determinative of the question before us in the instant case.

The plaintiff in *Cohen* did not raise, and thus the court did not decide, the question of whether the statute's failure to provide for prior notice and hearing violated *procedural* due process. Rather, the high court upheld the statute against a *substantive* due process attack, thereby determining only that the state's imposition of a security for costs requirement to prevent frivolous derivative shareholder's suits was within the state's "plenary power over this type of litigation" (*id.* at p. 550 [93 L.Ed. at p. 1538]) and was not totally " 'arbitrary, capricious and unreasonable.' " (*Id.* at p. 551 [93 L.Ed. at p. 1539].) Furthermore, the *Cohen* court did not decide whether the New Jersey provision violated the *state* constitution (*id.* at p. 547 [93 L.Ed. at pp. 1536-1537]), thereby recognizing that compliance with federal due process principles did not insure satisfaction of state constitutional requirements. Finally, unlike sections 947 and 951, the New Jersey statute impliedly provided for a case-by-case judicial determination of the reasonable amount of the security required and in effect protected those parties on whose behalf the derivative suit was prosecuted (i.e., the shareholders), rather than the adverse litigant (i.e., the management). In light of these numerous distinctions between *Cohen* and the matter before us, we find defendants' reliance thereon misplaced.

statutory procedures permitting a temporary deprivation of property without a *prior* due process hearing.[15] Quite apart from the fact that we rest our decision on the due process provisions of the California Constitution as well as on those of the United States Constitution, we decline defendants' invitation. As we proceed to explain, we find significant distinctions between the questions resolved in defendants' cited cases and the question now before us which satisfy us that we are not under compulsion to apply the rationale of those authorities.

First of all, the statutes approved by the Supreme Court provided various pre-deprivation procedural safeguards which "minimize[d] the risk of error in the initial removal decision . . . ." (*Arnett* v. *Kennedy, supra*, 416 U.S. at p. 170 [40 L.Ed.2d at p. 42]; concurring opn., Justice Powell; *Mitchell* v. *W. T. Grant Co., supra*, 416 U.S. at pp. 605-606 [40 L.Ed.2d at pp. 412-413].) In contrast, sections 947 and 951 effectuate a "taking" upon the mere demand of the defendant, without requiring prior judicial approval or proof of any kind. Second, the procedures upheld by the court in both cases operated in circumstances which might necessitate prompt action, so that a prior hearing could frustrate legitimate interests of the state or of another individual. (*Arnett* v. *Kennedy, supra*, 416 U.S. at p. 168 [40 L.Ed.2d at p. 41]; concurring opn.,

---

[15]In *Mitchell* v. *W. T. Grant Co., supra*, 416 U.S. 600, the court upheld a Louisiana statute which authorized a state trial judge to order sequestration of the personal property of a debtor on the ex parte application of a creditor who proved by affidavit that he had a vendor's lien on the property and that the debtor had defaulted in making payments due under a conditional sales contract. The creditor was also required to file a sufficient bond to protect the debtor in the event the sequestration proved to have been wrongful. Under the terms of the statute, the debtor could immediately thereafter move to dissolve the sequestration. At the subsequent adversary hearing on the matter, the creditor had the burden of proving the grounds upon which the writ issued and the existence of the debt, lien and delinquency. If he failed to establish this prima facie case, the court ordered the property returned to the debtor and assessed damages in his favor, including compensation for the period he was deprived of the use of the property as well as compensation for injury to his social standing or reputation, for the humiliation suffered and for attorney's fees.

In *Arnett* v. *Kennedy, supra*, 416 U.S. 134, the court upheld against due process attack the constitutional validity of the provisions of the Lloyd-LaFollette Act (5 U.S.C.A. § 7501 [5 U.S.C.S. § 7501]) regulating removal or suspension without pay of a nonprobationary government employee, who under the terms of the statute could be removed "only for such cause as will promote the efficiency of the service." The removal procedure prescribed by this statute and the regulations promulgated thereunder provided that before a nonprobationary employee could be removed, he was entitled to 30 days advance written notice of the charges against him and the opportunity to examine the materials upon which the charges are based, a reasonable time within which to answer the charges, either orally or in writing (with affidavits) before the officer who makes the removal decision, and written notice of an adverse decision, on or before its effective date. Thereafter, the employee could appeal from the decision and was entitled to an evidentiary trial-type hearing. If reinstated, the employee was to receive full back pay.

Justice Powell; *Mitchell* v. *W. T. Grant Co., supra,* 416 U.S. at pp. 608-609 [40 L.Ed.2d at p. 414].) This is clearly not a consideration in the case at bench. The delay occasioned by a prior due process hearing would not interfere with the state's interest in deterring unmeritorious litigation, as the hearing would be designed to bring to light actions lacking merit and to require the plaintiff to furnish the specified undertaking before proceeding further with them. As a matter of fact, the procedure as it currently operates tends to frustrate the state's express goal of assuring that "no unreasonable burden is placed upon a meritorious litigant." (Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar 1964) Cal. Law Rev. Com. Comment re § 947, p. 785; see also, *Boyer* v. *County of Contra Costa, supra,* 235 Cal.App.2d at p. 117.) Third, the statutory schemes validated by the high court provided for prompt post-deprivation due process hearings. (*Arnett* v. *Kennedy, supra,* 416 U.S. at p. 145 [40 L.Ed.2d at p. 28]; *Mitchell* v. *W. T. Grant Co., supra,* 416 U.S. at p. 610 [40 L.Ed.2d at p. 415].) On the other hand, sections 947 and 951 prohibit such a hearing, since a trial court has no discretion to dispense with the requirement on the grounds that the plaintiff's lawsuit is meritorious. Fourth, the Supreme Court noted that the party subjected to the "taking" was entitled to compensation in the event that it proved wrongful. (*Arnett, supra,* 416 U. S. at p. 170 [40 L.Ed.2d at p. 42]; concurring opn., Justice Powell; *Mitchell, supra,* 416 U.S. at p. 606 [40 L.Ed.2d at pp. 412-413].) No such provision protects the plaintiff under the statutes now before us.

Finally, we believe it is significant to point out that *Mitchell* has particular relevance to the matter before us, since both cases involve a procedure by which property is taken pursuant to state law from one litigant for the protection of another. (See fn. 15, *ante.*) Yet there is one major distinction. In *Mitchell* the party who suffered the taking as well as the party who benefitted thereby had "current, real interests in the property." The high court emphasized that the "[r]esolution of the due process question must take account not only of the interests of the buyer of the property but those of the seller as well." (*Mitchell* v. *W. T. Grant Co., supra,* 416 U.S. at p. 604 [40 L.Ed.2d at p. 412].) We, too, have recognized the need to accommodate competing interests of two parties in the same property when determining the constitutional requisites for a valid taking. (See, e.g., *Adams* v. *Department of Motor Vehicles, supra,* 11 Cal.3d at pp. 154-155.) Unlike the statute in *Mitchell,* the statutes now before us deprive the plaintiff of property in which the defendant has no competing interest.

These differences between the procedures approved by the United States Supreme Court in *Mitchell* and *Arnett* and the statutory scheme

prescribed by sections 947 and 951 are of distinct significance in light of that court's most recent decisions in the area of procedural due process. (See *North Georgia Finishing, Inc.* v. *Di-Chem, Inc., supra,* 419 U.S. 601; *Goss* v. *Lopez, supra,* 419 U.S. 565.) The case of *North Georgia Finishing, Inc.* v. *Di-Chem, Inc., supra,* in particular, establishes that where state law authorizes one litigant to take the property of his adversary, the due process clause of the United States Constitution at the least requires judicial participation in the initial taking decision and "an early hearing" at which the party imposing the taking demonstrates probable cause to justify it. (*Id.* at p. 607 [42 L.Ed.2d at p. 757].) In the instant case, such probable cause would consist of a prima facie showing on the issues of lack of merit and potential costs.

To recapitulate, we hold that since the requirement of a written undertaking as security for allowable costs prescribed by sections 947 and 951 constitutes a taking of property without due process of law, each of said statutes is unconstitutional as being violative of the Fifth and Fourteenth Amendments to the United States Constitution and of article I, sections 7 and 15, of the California Constitution.

Let a peremptory writ of mandate issue as prayed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.